Thomas James HAND,
Plaintiff–Appellee,

v.

Stuart GARY, Individually and In His Official Capacity as Deputy Sheriff,
Defendant–Appellant.

Nos. 86–1875, 87–1062.

United States Court of Appeals,
Fifth Circuit.

March 10, 1988.

Charles Louis Roberts, Duane A. Baker, El Paso, Tex., for defendant-appellant.

Edward Tibbetts, Mobile, Ala., for plaintiff-appellee.

Before GOLDBERG, POLITZ and DAVIS, Circuit Judges.

GOLDBERG, Circuit Judge:

Thomas James Hand brought this action for damages for malicious prosecution pursuant to 42 U.S.C. § 1983. A jury found Defendant, Deputy Sheriff Stuart Gary, liable for intentional violation of the constitutional rights of Plaintiff Hand. We reverse, concluding that there were no facts on the record to support the jury's conclusion that the actions of defendant were a legal cause of the damage suffered by Plaintiff.

## I. Facts

In early 1982, Dick Guest began negotiations with Daniel Atkinson for sale of Guest's disabled 1978 pickup truck. After two meetings, Guest agreed to sell the truck to Atkinson for $2000, on the condition that Atkinson remove a butane tank and a specially designed carburetor from the truck. The $2000 was payable in monthly instalments, following a $100 down payment. Guest and Atkinson executed a title application and filed the application at the courthouse. After paying only $100, and without removing the carburetor and butane tank, Atkinson left the state in the truck.

Guest then filed a complaint in the local court in Van Horn, Texas, alleging unlawful removal of mortgaged property, and called Defendant, Deputy Sheriff Gary. Gary took down this information, listed the vehicle as stolen with the National Crime Investigation Computer (the "NCIC") and referred the matter to the Texas Department of Public Safety. Title, however, never transferred to Atkinson. When the truck was reported stolen, the processing of the application for title stopped.

In March of 1982, Guest received a postcard, postmarked Mobile, Alabama, saying that his truck had been spotted and that any further action would require a $75 payment in advance. Guest then called the phone number on the postcard and reached Plaintiff Hand. Hand told Guest that he had spotted the truck and that he would reveal its location for a fee of $250. Guest told Hand that the truck was stolen and asked him to reveal the location of the truck without charge. Hand refused, saying he didn't "work for free." Guest then contacted Deputy Sheriff Gary about the conversation with Hand. Gary called Hand, told him that the truck was stolen, and had an angry conversation with him over whether Hand would reveal its location.

Gary then contacted Officer Greer of the Texas Department of Public Safety. Officer Greer, recognizing that Mobile, Alabama was outside his jurisdiction, contacted the Federal Bureau of Investigation. The FBI sent Special Agent Beck to investigate.

Agent Beck contacted Guest, who told him that Atkinson had taken the truck out of state without his permission, and that

his carburetor and butane tank had been taken as well. Guest agreed to let Agent Beck tape two telephone conversations with Hand. From these conversations, Agent Beck learned that Hand had located the truck and that he steadfastly refused to reveal its location. Agent Beck also learned at this time about the partially consummated sale transaction which occurred before Atkinson disappeared with the truck.

Based on this information, Agent Beck signed a criminal complaint against Hand for concealing the location of stolen property, and referred the matter to the office of the United States Attorney. Agent Beck testified before a grand jury which returned an indictment. The prosecutor's office later withdrew this indictment and a second superseding indictment was obtained. After the superseding indictment, Hand's attorney informed the prosecutor's office that Atkinson had legal title to the pickup and that the truck was not stolen. The prosecutor therefore dismissed the superseding indictment.

After dismissal of the superseding indictment, Mr. Hand brought this action for malicious prosecution pursuant to 42 U.S.C. § 1983, alleging that Guest, Gary, Beck and others had conspired to deprive him of his constitutional rights. Upon learning that he had been sued, Deputy Sheriff Gary called Agent Beck to ask if Beck could do anything to help Gary with the civil suit. Beck responded that Gary would have to hire his own lawyer. Gary may also have inquired about the possibility of reindicting Hand.[1]

Assistant United States attorney McDonald later engaged in further investigation, and determined that title to the truck remained with Guest, and that the truck was indeed stolen. McDonald then sought and obtained a third indictment for concealing stolen property. Hand was tried and acquitted of this criminal charge.

This civil case was tried to a jury before District Judge Lucius D. Bunton in the Western District of Texas. Judge Bunton issued a directed verdict with respect to Beck and the other defendants, but allowed the jury to decide the question of liability with respect to Guest and Gary. Judge Bunton found that the jury's responses to eight special interrogatories supported a judgment of $19,800 against defendant Gary.[2] The district court denied Gary's motion for a judgment notwithstanding the verdict and Gary now appeals to this court.

1. The testimony on this point is ambiguous. Hand's attorney questioned Gary with respect to his testimony at the criminal trial relating to this phone call. He asked Gary whether he remembered discussing the possibility of reindicting Hand as follows:

Q ... But you all discussed the possibility of reindicting Mr. Hand, didn't you?
A I think that was probably discussed, yes, sir.
Q ... Do you remember that testimony?
....
A I remember some of it not all of it, sir.
Q All right. You stated in there you and the sheriff and the federal agent from the FBI all discussed the fact of whether they could reindict Mr. Hand?
A I didn't say that. The attorney said that in there.
Q Okay. But you discussed it?
A I don't recall discussing it, sir.
(R.Vol. II, pp. 87–88). In context, it is unclear from this exchange whether Gary was testifying to his recollection of the testimony at the criminal trial or his recollection of the actual conversation. On cross examination it becomes clear that at the criminal trial, the defense attorney had questioned Gary about this phone call, and Gary had testified that when he was sued he had simply called Agent Beck to check on the status of the suit because he had been under the impression that Hand was still under indictment (R. Vol. II, p. 98). Still this testimony is ambiguous, and we are unable to say that the jury was not entitled to infer that Gary intended to influence the federal authorities in their exercise of prosecutorial discretion.

2. When asked, "Do you find that Defendants[ ] performed an intentional act which operated to deprive the Plaintiff of a Constitutional Right?" The jury answered "Yes" with respect to defendant Gary, and "No" with respect to defendant Guest. When asked, "Do you find the action of Defendants were done under color of state law?" The jury answered "Yes" with respect to Gary, and "No" with respect to Guest. When asked, "Do you find that such action was a proximate cause of damages to the plaintiff?" The jury answered "Yes" with respect to both Gary and Guest. When asked, "Do you find Defendants acted in good faith?" The jury answered "No" with respect to Gary and "Yes" with respect to Guest. When asked, "Do you find that Defendants maliciously, wantonly, or with conscious disregard, caused any injury to Plaintiff without justification or excuse?" The jury answered "Yes" with respect to Gary and "No" with re-

## II. Discussion

"The first inquiry in any § 1983 suit ... is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.' " *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979). The briefs in this case do not state clearly which specific constitutional rights are at issue. In an answer to Judge Davis's special interrogatory Plaintiff's counsel referred to the action as an action for malicious prosecution. Plaintiff has also alleged facts and cited cases which deal with false arrest. We deal with both constitutional theories, and find that under each theory, for the same reason, Plaintiff failed to prove a constitutional violation.

 We are faced with two constitutional questions, both going to the jury's finding of causation: (1) whether Gary, by calling Agent Beck to discuss reindictment after learning of the civil suit violated Plaintiff's constitutional right to be free of bad faith prosecution, *Wheeler v. Cosden Oil and Chemical Co.,* 734 F.2d 254 (5th Cir.), *modified on reh'g on other grounds,* 744 F.2d 1131, 1133 (5th Cir.1984); and (2) whether Gary, by reporting Guest's truck stolen caused the allegedly false arrest of Hand. *Thomas v. Sams,* 734 F.2d 185 (5th Cir.1984), *cert. denied,* 472 U.S. 1017, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985).[3]

### A. Malicious Prosecution—Use of Criminal Prosecution as Coercion?

Plaintiff alleges that when Gary learned he was being sued for false arrest and malicious prosecution, he attempted to convince federal agents to use criminal prosecution of Hand as leverage in the civil suit. Had Plaintiff demonstrated that Gary succeeded, there is no doubt in our mind that he would have proved a constitutional violation. Unfortunately, his proof failed as a matter of law.

There is a constitutional right to be free of "bad faith prosecution." Federal prosecutors "enjoy absolute immunity for acts taken to initiate prosecution." *Rykers v. Alford,* 832 F.2d 895, 897 (5th Cir.1987) (citing *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). Bad faith prosecution has, however, been held repeatedly to cause sufficient irreparable harm to support federal injunction of a state prosecution. *Dombrowski v. Pfister,* 380 U.S. 479, 490, 85 S.Ct. 1116, 1122, 14 L.Ed.2d 22 (1965); *Shaw v. Garrison,* 467 F.2d 113 (5th Cir.), *cert. denied,* 409 U.S. 1024, 93 S.Ct. 467, 34 L.Ed.2d 317 (1972). *Cf. Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (suits to enjoin bad faith prosecutions are an exception to the general rule against federal injunction of state court proceedings). In this Circuit bad faith prosecution has been held sufficient to support a damage judgment against state law enforcement officials under 42 U.S.C. § 1983, despite the immunity of the federal prosecutor. *Wheeler v. Cosden Oil and Chemical Co.,* 734 F.2d at 254.[4]

For the first time, we are called upon to examine a jury finding of liability for mali-

spect to Guest. The jury set damages at $18,300 for costs of the criminal case, and $1500 as punitive damages.

**3.** In recognizing that cases in this Circuit have held that illegal arrest and bad faith prosecution by public officials acting under color of state law may rise to the level of a constitutional violation, we need not decide, do not hold, and do not mean to intimate, that the rights secured by the Constitution are precisely coextensive with the common law torts of false arrest and malicious prosecution.

The Fourteenth Amendment protects those specific rights, guaranteed by the Bill of Rights, which are required for ordered liberty, *Palko v. Connecticut,* 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937), and guards more generally against

official conduct which "shocks the conscience." *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). Traditional concepts of tort law are informative in determining what constitutes a "reasonable" search or seizure under the Fourth Amendment, or what offends standards of common decency under the Fourteenth, but they are not dispositive.

**4.** There is some variation among the circuits over when bad faith prosecution rises to the level of a constitutional tort. *See Wheeler,* 734 F.2d at 260 n. 14. The Second and Fourth and Ninth Circuits have recognized such a cause of action. *Singleton v. City of New York,* 632 F.2d 185 (2d Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981); *Morrison v. Jones,* 551 F.2d 939 (4th Cir.1977); *Tucker v.*

cious prosecution under § 1983. We may not reverse lightly. We may reverse a jury's finding of fact only if "the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict." *Boeing Company v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc). To engage in such an examination, it is necessary to look carefully at the factual settings that have been held sufficient to survive a motion to dismiss in *Dombrowski, Shaw* and *Wheeler.*

In *Dombrowski,* members of the Southern Conference Educational Fund, Inc. sought an injunction restraining the Governor, police and law enforcement officials of Louisiana from prosecuting them under the Louisiana Subversive Activities and Communist Control Law, and Communist Propaganda Control Law. Initially, plaintiffs were arrested. Later a state judge quashed the arrest warrants as not based on probable cause, and the court granted a motion to suppress evidence seized in an illegal raid of plaintiff's offices. A three judge court was convened to consider the constitutionality of the Louisiana statutes. Soon thereafter a state grand jury was convened. The three judge court issued a temporary restraining order against the prosecutions pending hearing. When the TRO was dissolved by the three judge court, the grand jury returned indictments against the individual appellants. The Supreme Court said,

> [Plaintiffs] have attacked the good faith of the appellees in enforcing the statutes, claiming that they have invoked, and threaten to continue to invoke, criminal process without any hope of ultimate success, but only to discourage appellants' civil rights activities. If these allegations state a claim under the Civil

Rights Act, 42 U.S.C. § 1983, as we believe they do ... the interpretation ultimately put on the statutes by the state courts is irrelevant.

380 U.S. at 490, 85 S.Ct. at 1123. The facts alleged were held sufficient to support a federal injunction of the state prosecution. Indeed, today, the constitutional right against bad faith criminal prosecution has been enshrined as one of the few exceptions to the general prohibition of federal injunctions against state court proceedings. *Younger,* 401 U.S. at 37, 91 S.Ct. at 746.

In *Shaw,* Jim Garrison, the District Attorney for the Parish of Orleans, Louisiana became fixated on the idea of solving the murder of John F. Kennedy. He became, through his own investigations, convinced that Clay Shaw had conspired with Lee Harvey Oswald to assassinate President Kennedy. Shaw was arrested, indicted, tried and acquitted of the conspiracy. During the course of the trial, Shaw took the stand in his own defense. The day after the jury returned a verdict of not guilty, Garrison signed an information charging Shaw with perjury. Shaw sought an injunction in federal court. The district court inferred bad faith from the following facts: the delay between Kennedy's assassination and Garrison's investigation; the lack of any basis for the initial investigation; the extreme methods used in extracting evidence from witnesses (sodium pentothal); Garrison's use of private funds to support the investigation; that the manner of Shaw's arrest was calculated to garner publicity for Garrison; and finally that Garrison had a significant financial interest in continued prosecution of Shaw because it produced publicity for a book written by Garrison about the Kennedy assassination. At the injunction hearing, Garrison offered no rebuttal to the evidence presented by

---

*Duncan,* 499 F.2d 963 (4th Cir.1974); *Bretz v. Kelman,* 773 F.2d 1026 (9th Cir.1985) (en banc) (an action for malicious prosecution may be brought only when the the malicious prosecution is brought with the intent to "deprive a person ... of constitutional rights.").

The Sixth Circuit has recognized that egregious misuse of legal proceedings rises to the level of a constitutional violation. *Dunn v. Tennessee,* 697 F.2d 121, 125 (6th Cir.1982), *cert.*

*denied,* 460 U.S. 1086, 103 S.Ct. 1778, 76 L.Ed.2d 349 (1983).

The First and Tenth Circuits have rejected claims of abuse of process in § 1983 under specific factual circumstances without conclusively ruling out the possibility that abuse of process may rise to the level of a constitutional violation. *See Cloutier v. Town of Epping,* 714 F.2d 1184, 1190 (1st Cir.1983); *Martin v. King,* 417 F.2d 458 (10th Cir.1969).

Shaw. In approving the District Court's finding, Judge Wisdom quoted at length the district court's statements as to the burden of proof in malicious prosecution:

The burden of proof is, of course, upon the plaintiff Shaw to prove by a preponderance of the evidence the existence of exceptional and unusual circumstances that would justify this court's intervention.... When the plaintiff's evidence constitutes a prima facie case, the burden is on the defendant of going forward with any evidence to rebut the plaintiff's case.... In this case the defendant Garrison offered no proof, apparently relying on the supposed inability of Shaw to sustain his burden and that even if Shaw did, he would not be entitled to any relief by this court. In those instances where the plaintiff proved certain facts by a preponderance of the credible evidence, and the defendant failed to rebut those facts either on cross-examination or by offering contrary evidence, this court has accepted those facts as true.

467 F.2d at 116 n. 3 (quoting *Shaw v. Garrison*, 328 F.Supp. 390, 395 (D.La. 1971)).

Finally, in *Wheeler,* Wheeler was arrested, indicted and acquitted, apparently for attempted theft of oil. The arrest and indictment rested on information obtained from a drop meter that measured the amount of oil flowing off of the property in question. Wheeler alleged that the investigator, an agent of the Texas Railroad Commission, had intentionally tampered with the meter so as to under-record the amount of oil leaving the property, and to make it appear that Wheeler was either stealing oil elsewhere or falsifying his records. After determining that *Shaw* survived the Supreme Court case of *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the panel reversed the district court's dismissal for failure to state a claim, holding that allegations of malicious prosecution would support an action for damages under § 1983 against state actors who were not beneficiaries of prosecutorial immunity, stating:

If, then, the Fourteenth Amendment imposes a duty on state prosecutors to charge only upon ascertaining probable cause, it follows that one acting under color of state authority ... can be liable for subverting the performance of that duty, as by maliciously tendering false information to the prosecutor which leads him to believe that probable cause exists where there is none. Since this would violate federally guaranteed rights, it therefore can be grounds for a § 1983 action.

734 F.2d at 260 (Gee, J.).

■ From these three cases four propositions emerge. First, from *Dombrowski,* we learn that bad faith prosecution violates constitutional rights. Second, from *Shaw,* we learn that when plaintiff raises a prima facie case of malicious prosecution, the burden shifts to defendant to show that his actions were not the product of improper motivation. Third, from *Wheeler,* we learn that state actors other than prosecutors may be liable for damages for bad faith prosecution, if they join in malicious prosecution by prosecutors, or if their malice results in an improperly motivated prosecution without probable cause. Finally, we learn from all of these cases, that simply obtaining an indictment is not enough to insulate state actors from an action for malicious prosecution under § 1983. In all of these cases indictments were obtained, but the finding of probable cause remained tainted by the malicious actions of the government officials.

■ Applying these principles to the case at hand, we find that Plaintiff did allege a set of facts which if proved would support a finding of malicious prosecution. Plaintiff alleged that Gary and others had caused the third criminal indictment to issue simply to gain leverage in a civil suit for malicious prosecution.

■ The jury found that Gary acted maliciously. One equivocal piece of evidence supports this allegation, with respect to an action for malicious prosecution. Gary did call Agent Beck to check on the status of the case, and there is some evidence that they discussed the possibility of reindicting

Hand.[5] Hand presented no further evidence of malicious action. No offers were made to drop the criminal case if the civil prosecution was terminated. The criminal case has long since terminated, and the civil case goes on. But, that one piece of evidence, Gary's call to Agent Beck, is sufficient to raise an inference of malice.

This cause of action fails, not because Hand presented no evidence of malice, but because the defense met their burden of rebutting that evidence. Evidence of malice may be rebutted either by showing that the mental state of defendant had no effect on the course of the prosecution, or by undercutting the inference of malice itself. Gary succeeded at rebutting Hand's evidence by showing a lack of causation.

■ In the fourth amendment context, evidence is not suppressed when proven malice has no effect on police behavior, where the "activity taken is precisely the same as would have occured had that intent or motivation been entirely absent from the case." 1 W. LaFave, *Search & Seizure: A Treatise on the Fourth Amendment*, 1.4(e) at 92 (2d ed. 1970). We can see no reason why the same degree of protection should not be accorded to law enforcement officials where monetary damages are at stake under the fourteenth amendment. Therefore, where, as here, defendant can demonstrate that prior to bringing further charges, probable cause was reasserted, and that departmental procedures were followed in procuring an indictment, and no relevant information was withheld from the grand jury, then prosecutorial emotion cannot be deemed to have caused a constitutional deprivation.

The jury found that the actions of Gary were a proximate cause of damage to Hand. We must, however, reverse this finding. The testimony of Assistant U.S. Attorney McDonald demonstrated that he sought the third indictment only after further investigation led him to the conclusion that Hand's attorney had persuaded him to

withdraw the superseding indictment by an incorrect representation—that Atkinson had title to the truck (R. Vol. III, pp. 77, 88). Furthermore, Gary demonstrated that no information was withheld from the federal agents. From the first meeting between Guest, Beck and Gary, Agent Beck was aware of the partial sale transaction between Atkinson and Guest. Beck's testimony that he testified truthfully to the grand jury on this point is uncontroverted.

The evidence adduced at trial shows that however angry Gary, Beck or McDonald might have been over Hand's suit it did not lead them to abuse their power as law enforcement officials.

### B. False Arrest

■ The Fourth and Fourteenth Amendments guard against arrest without probable cause. As we said in *Thomas v. Sams*, 734 F.2d 185 (5th Cir.1984), *cert. denied*, 472 U.S. 1017, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985), "The right to be free from illegal arrest plainly enjoys [constitutional] protection." *Id.* at 191. "[A]n officer who maliciously seeks to obtain a facially valid warrant should not be absolved of liability simply because he succeeded." *Id.* (citing *Rodriguez v. Ritchey*, 556 F.2d 1185, 1194–95 (5th Cir.1977) (en banc), *cert. denied*, 434 U.S. 1047, 98 S.Ct. 894, 54 L.Ed.2d 799 (1978) (Hill, J. concurring)).

■ But, in *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir.1982), *cert. denied*, 459 U.S. 1137, 103 S.Ct. 772, 74 L.Ed.2d 984 (1983), we held that "even an officer who acted with malice in procuring the warrant or the indictment will not be liable if *the facts* supporting the warrant or indictment are put before an impartial intermediary such as a magistrate or a grand jury, for that intermediary's 'independent' decision 'breaks the causal chain' and insulates the initiating party." (emphasis added) *Id.* (citing *Rodriguez*, 556 F.2d at 1193). To recognize the concerns of Judge Hill and follow the *Smith* court, we must note that the

---

**5.** Gary also had an angry telephone conversation with Hand, prior to any legal action where he attempted to convince Hand to reveal the location of the truck. This is circumstantial evidence of malice, but says nothing about whether Gary acted with malice. All other actions taken by Gary took place before the existence of Hand was known to Gary.

chain of causation is broken only where all the facts are presented to the grand jury, or other independent intermediary, where the malicious motive of the law enforcement officials does not lead them to withhold any relevant information from the independent intermediary. Any misdirection of the magistrate or the grand jury by omission or commission perpetuates the taint of the original official behavior.

*Thomas* illustrates the importance of this independent intermediary. There a mayor maliciously swore out a complaint in his capacity as mayor, and then issued an arrest warrant in his capacity as magistrate. No independent intermediary broke the chain between malicious action and illegal arrest. We therefore reversed a district court's finding that the mayor's action caused no constitutional deprivation.

■ In this case, the jury found that Gary's actions were the proximate cause of damage to Hand. Two sets of actions by Gary might support an action for false arrest. Gary listed the truck as stolen, when arguably it was not stolen, and Gary made the phone call to Agent Beck discussed above. Again, however, we are faced with the problem of causation, and the requirements of causation are more stringent for false arrest than they are for malicious prosecution. An independent intermediary breaks the chain of causation unless it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant. Here there is no such evidence. As we stated above, Gary withheld no information from the federal agents, from the federal prosecutors or from the federal grand jury. On this theory as well, it is necessary to reverse the jury's finding of causation.

### III. Conclusion

For the reasons stated above, we must conclude that the actions of defendant caused no constitutional deprivation, and that the jury had no facts before them to support their finding to the contrary. The order of the district court is therefore RE-VERSED and REMANDED with instructions to enter judgment for defendant.