**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 27, 2012

No. 11-10805

Lyle W. Cayce
Clerk

SUSAN CRAIG,

Plaintiff – Appellant

v.

DALLAS AREA RAPID TRANSIT AUTHORITY; GEORGE RUIZ; ARTHUR
WILDER; KIM OSWALD; JAMES SPILLER,

Defendants – Appellees

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:10-CV-323

Before JOLLY, HIGGINBOTHAM, and DENNIS,[*] Circuit Judges.

PER CURIAM:[**]

Susan Craig, the plaintiff-appellant, was employed as a Police Field
Training Officer by Dallas Area Rapid Transit Authority (DART) until she was
arrested and indicted for evidence tampering: first, for hitting herself in the face

---

[*] Dennis, Circuit Judge, joins the majority on all issues but one, disagreeing with the
majority's conclusion that summary judgment was warranted on the independent-
intermediary, broken-chain issue.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 11-10805

allegedly to fake personal injuries after a physical altercation with a DART customer and, second, for faxing a supposedly exculpatory letter to DART during the agency's criminal investigation of her. The case ultimately proceeded to trial, where Craig was acquitted.

After her acquittal, Craig filed this civil suit in federal district court alleging that DART, as well as its employees, Officers George Ruiz, Arthur Wilder, Kim Oswald, and James Spiller, violated her state and federal rights by carrying out her false arrest, depriving her of the Fourteenth Amendment right to a fair trial, and conducting a malicious, baseless prosecution. On summary judgment, the magistrate judge[1] dismissed Craig's complaint and entered judgment for DART; we AFFIRM.

## I.

We begin by laying out the factual background. On July 2, 2007, Susan Craig received a three-month-long assignment to DART light rail train patrol, a position that required her to check DART passengers' rail cards and assure that customers had paid for their trips. Craig resented this assignment, saying that she was going to "arrest any[one] she could so that patrol was tied up" and threatening that "[DART] is going to wish they never put me on trains." Around 11:30 a.m. that day, at the Cedars DART station, Craig approached passenger Markeith Blacknall. Despite the fact that Blacknall was not breaking any rules, Craig removed him from the train and attempted to issue him a citation. When Craig tried to make Blacknall sign the citation, a conflict broke out. Cherish Fitz, a passenger who was accompanying Blacknall, accosted Craig and allegedly kicked her in the face, giving Craig a black eye. Another female passenger who was traveling with Fitz and Blacknall then joined the altercation. The conflict escalated.

---

[1] The parties consented to trial before a magistrate judge pursuant to 28 U.S.C. § 636(c).

2

No. 11-10805

Craig called for assistance from other DART officers. After Fitz and her friend were arrested, Craig filled out an affidavit so that Fitz could be charged with assault. At the scene, Officer Wilder observed Craig slightly bend her head and curl her fingers inward, exposing the palm of her hand. Then, according to Officer Wilder, Craig struck herself "hard," with enough force to move her head slightly upward, in the area of her black eye. Craig's account was somewhat different from Wilder's; she claims she "tried to alleviate the pain [of her black eye] by rubbing and hitting the area where she had been kicked." She offers no further explanation as to how hitting herself in the wounded area would relieve her pain. That day, Wilder filled out an affidavit stating that he witnessed Craig hitting herself in the face

After considering Craig's behavior at the scene, along with her behavior earlier that same day,[2] DART immediately put Craig on involuntary, administrative leave. Officer Spiller, DART's chief officer, ordered Officer Ruiz to conduct a criminal investigation of Craig for evidence tampering. While Craig was on administrative leave, DART's Media Relations Department received a faxed letter signed by a child named "G. Peña." The typewritten, strangely-worded letter relates the details of Craig's confrontation with Fitz, allegedly as observed by G. Peña's non-English-speaking parents. Investigators were able to trace the fax back to a local Office Depot store. After questioning the store's clerk, officers suspected that Craig, rather than the unidentified "G. Peña," had sent the fax. They concluded that the letter had been forged by Craig.

During DART's investigation, Rebecca Williams, a DART human resources officer, attended a meeting with Officer Spiller. According to Williams's

---

[2] Earlier on July 2, Craig arrested a person with a valid fare card and student ID without probable cause and made demeaning and sexually explicit comments to him. Later in the day and before the events in question, Craig made similar abusive comments to another passenger.

3

affidavit, Officer Spiller confided in Williams "that he was going to ruin [Craig's] career, and that he wanted to get her convicted on the criminal charge of falsifying an injury report." Spiller further revealed to Williams that "he had an officer who would say whatever he (Spiller) needed him to say regarding the incident of July 7, 2007" and that "George Ruiz is working to get a conviction."

After DART's investigation and Craig's subsequent discharge in November 2007, Officer Spiller referred the matter to the Dallas District Attorney's office. The District Attorney's office presented the case to a grand jury, which indicted Craig. The case went to trial on a single charge of tampering with evidence, and the jury acquitted Craig.[3]

Following her acquittal, Craig filed a federal civil suit, under 42 U.S.C. § 1983, against DART and Officers Oswald,[4] Ruiz, Spiller, and Wilder. In that suit, which now forms the basis for this appeal, she asserted violations of her civil rights under the Fourth and Fourteenth Amendments and Texas law, alleging that defendants arrested her without probable cause, withheld exculpatory information, and committed the tort of malicious prosecution. The magistrate judge found that Craig had put forth no evidence of any constitutional or state law violation and dismissed all of Craig's claims on summary judgment. Craig filed a motion for a new trial or to alter the judgment, which was also denied.

Craig now appeals arguing that the district court erred by granting summary judgment in defendants' favor.

---

[3] After the jury acquitted Craig, she filed a Petition for Expunction, requesting that all files related to her criminal trial be destroyed. A Dallas County District Court granted the petition. Because the relevant documents no longer exist, certain details regarding the timing and nature of Craig's arrest and trial cannot be provided by this court.

[4] Officer Oswald, who is named as a defendant in this case, was in charge of frisking Fitz and her friend and transporting them to jail. This appears to be the full extent of Officer Oswald's involvement in Craig's case.

No. 11-10805

## II.

We review a district court's grant of summary judgment *de novo.* *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 853 (5th Cir. 2003). Summary judgment is appropriate if there is no genuine dispute as to any material fact in the case and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A "pretended issue, one that no substantial evidence can be offered to maintain, is not genuine" and therefore must be dismissed. *S. Distrib. Co. v. Southdown, Inc.*, 574 F.2d 824, 826 (5th Cir. 1978) (internal quotation marks omitted). Here, because Craig has offered no evidence of violations of her Fourth and Fourteenth Amendment rights and cannot, under Texas law, sue the named governmental entities, the district court did not err when it dismissed her case

## III.

First, we consider Craig's Fourth Amendment claim in which she alleges that her arrest represented an unconstitutional seizure of her person. The primary question here is whether the police officers involved in the prosecution had probable cause to believe Craig had committed a criminal act by striking herself after the altercation with Fitz. If there was probable cause, DART's arrest and subsequent indictment of Craig were not unreasonable, and there was no constitutional violation.[5] *See Carroll v. United States*, 267 U.S.

---

[5] We are cognizant of the relevance of the doctrine of qualified immunity. Normally, qualified immunity protects government officials from liability for civil damages unless a plaintiff pleads facts showing that the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080 (2011). As set forth below, the DART officials named as defendants in this case are not subject to liability because there has been no constitutional violation of Craig's Fourth Amendment rights. The appropriateness of qualified immunity is further confirmed by evidence in this case suggesting that the DART defendants were neither affiants nor the individuals who prepared or were responsible for the warrant for Craig's arrest. *See Michalik v. Hermann*, 422 F.3d 252, 261 (5th Cir. 2005) (stating the court's unwillingness to extend § 1983 liability to such persons).

5

132, 149 (1925) ("[T]he true rule is that if the search and seizure . . . are made upon probable cause . . . the search and seizure are valid.").

Even if, however, we disregard Craig's facial self-abuse and the "G. Peña" letter and assume, for the purpose of this opinion, that *no* probable cause existed for Craig's arrest, her Fourth Amendment claim ultimately fails. An independent intermediary – the grand jury – considered the criminal charges and returned an indictment against Craig. Precedent clearly establishes that, "if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994), *overruled on other grounds by Castellano v. Fragozo*, 352 F.3d 939, 949 (5th Cir. 2003) (en banc). For our purposes, this means that "even an officer [in Craig's case] who acted with malice in procuring the warrant or the indictment will not be liable if *the facts* supporting the warrant or indictment are put before an impartial intermediary such as a magistrate or a grand jury." *Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988) (internal quotation marks omitted).

Craig argues that the grand jury's deliberations were tainted by Officer Spiller's vendetta against her; however, her argument is based only on conjecture and, thus, does not preclude summary judgment. *See Duffie v. U.S.*, 600 F.3d 362, 371 (5th Cir. 2010) (stating "[T]he nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings."); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (stating that a nonmovant's burden in a summary judgment motion "is not satisfied . . . by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla of evidence.'"). For Craig, a mere *allegation* of taint, without more, is insufficient. *See Taylor*, 36 F.3d at 457 (emphasis added). In *Hand*, we emphasized that "[a]n independent intermediary breaks the chain of causation

unless it can be *shown* that the deliberations of that intermediary were in some way tainted by the actions of the defendant." 838 F.2d at 1428 (emphasis added); *see also Taylor*, 36 F.3d at 457. Here, Craig has not affirmatively shown, or attempted to show, what evidence the grand jury relied upon to return an indictment. She has not demonstrated the evidence presented to the grand jury was *improperly* presented nor that that evidence could have misled jurors in making an objective judgment. She has only pointed to a DART employee's affidavit indicating that Officer Spiller, hypothetically speaking, may have been willing to taint an investigation, but not that he actually did, particularly with regard to the matters presented to the grand jury. Thus, even if some of the DART officers harbored ill-will toward her, Craig has not overcome the presumption that an independent intermediary breaks the chain of causation. We thus affirm the judgment dismissing Craig's Fourth Amendment claim.

## IV.

Next, we turn to Craig's Fourteenth Amendment due process claim, which appears to be that the defendants withheld exculpatory information prior to her criminal trial. While it is true that the duty to disclose material exculpatory information is rooted in the concept of due process, *see United States v. Conroy*, 567 F.3d 174, 178 (5th Cir. 2009), the contours of Craig's argument are vague and not adequately argued in the briefs, so her claim is forfeited. FED. R. APP. P. 28(a)(9)(A) (requiring appellant's argument to contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which appellant relies"); *see also Weaver v. Puckett*, 896 F.2d 126, 128 (5th Cir. 1990) (stating that if appellant's argument is overly vague or inadequately briefed, the claim is "considered abandoned").

Even if Craig had not forfeited this argument, she would not be able to recover for a constitutional violation. The duty to disclose exculpatory

information exists to ensure that the accused receives a fair trial. *Matthew v. Johnson*, 201 F.3d 353, 360 (5th Cir. 2000). Because Craig was acquitted in her criminal trial, any intrusion, during that trial, upon her due process rights is harmless. *See Kyles v. Whitley*, 514 U.S. 419, 433 (1995) ("[F]avorable evidence is material, and constitutional error results from its suppression by the government, if there is a 'reasonable probability' that, had the evidence been disclosed to the defense, *the result of the proceeding would have been different*." (internal citations omitted) (emphasis added)). Furthermore, given that there is no evidence submitted by Craig to show that Officer Spiller submitted DART's investigation to the district attorney's office, that Officer Spiller testified before the grand jury, or that Officer Spiller testified at trial, Craig cannot establish a due process violation. There is nothing linking Officer Spiller to her trial, and there is nothing in the record suggesting that her trial was unfair for any reason.

V.

Finally, we turn to Craig's malicious prosecution claim. Although a freestanding federal § 1983 claim for malicious prosecution fails as a matter of law, *see Cuadra v. Houston Indep. Sch. Dist.,* 626 F.3d 808, 812-13 (5th Cir. 2010), there remains the possibility that Craig's claim is actionable under Texas tort law. After examining the relevant statute, however, we find that her claim is foreclosed.

The Texas Tort Claims Act (TTCA) provides a limited waiver of immunity for certain suits against Texas governmental entities. *See* TEX. CIV. PRAC. & REM. CODE § 101.021; *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008). If a plaintiff sues both a governmental unit and any of its employees under the TTCA, as Craig has in this case, "the employees shall immediately be dismissed on the filing of a motion by the governmental unit." TEX. CIV. PRAC. & REM. CODE § 101.106(e); *see also Garcia*, 253 S.W.3d at 657

No. 11-10805

("[The TTCA's] apparent purpose was to force a plaintiff to decide at the outset whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is vicariously liable."). Here, Craig sued DART and its officers, so the officers are entitled to dismissal from the suit. *See Garcia*, 253 S.W.3d at 658-59.

Craig's claim against DART the municipal entity fares no better. The TTCA expressly does not apply to claims "arising out of assault, battery, false imprisonment, or any other *intentional tort*." TEX. CIV. PRAC. & REM. CODE § 101.057(2) (emphasis added). Malicious prosecution is an intentional tort under Texas law. *See Kroger Texas Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 794 (Tex. 2006) (stating that, to prove the tort of malicious prosecution, "the plaintiff must prove not only that the defendant commenced criminal proceedings against her and she is innocent of the crime charged, but also that the defendant lacked probable cause and *harbored malice* toward her." (emphasis added)). This means that Craig's claim against DART does not fall under the purview of the TTCA and is thus precluded by DART's sovereign immunity as a governmental entity.

## VI.

In sum, we hold that the district court did not err by dismissing Craig's complaint. Craig cannot succeed on her claim for false arrest because the grand jury acted as an independent intermediary in returning the indictment. Furthermore, Craig cannot succeed on her Fourteenth Amendment due process claim because she cannot demonstrate that her criminal trial would have ended differently if DART officers had provided her with the exculpatory evidence of Officer Spiller's vendetta against Craig. Finally, Craig cannot succeed on her malicious prosecution claim because DART is entitled to sovereign immunity

No. 11-10805

and the DART officers are entitled to dismissal of Craig's claims under the Texas Tort Claims Act.

For these reasons, the judgment of the district court is

AFFIRMED.