# United States Court of Appeals for the Fifth Circuit

---

No. 23-40362

---

United States Court of Appeals
Fifth Circuit

**FILED**

June 20, 2024

Lyle W. Cayce
Clerk

Randal M. Hall,

*Plaintiff—Appellee*,

*versus*

Travis Trochessett; City of League City, Texas

*Defendants—Appellants*.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:22-cv-363

---

Before Jones and Douglas, *Circuit Judges*, and Doughty, *Chief District Judge*.[*]

Doughty, Writing Judge:[**]

This is a civil rights case brought by Randal Hall against Officer Travis Trochesset[1] and the City of League City, Texas, for alleged constitutional

---

[*] Chief United States District Judge for the Western District of Louisiana, sitting by designation.

[1] Appellee Travis Trochesset's name is misspelled in the caption of the case.

violations following his arrest for interference with a police investigation. For the following reasons, we AFFIRM.

## I.   BACKGROUND AND PROCEDURAL HISTORY

On September 2, 2022, Rachael Hall, Randal's wife, was in a minor automobile accident in a parking lot. Following the fender bender, she and the other party exchanged insurance information. Appellant claims that it was not his wife's fault; however, when she left the scene, the other driver called the police and informed them that he had been involved in a hit and run. An investigation ensued. Only the events following the investigation are at issue in this matter.

Police Officer Travis Trochesset, Appellee, investigated the car wreck. On the same day of the wreck, Trochesset arrived at the Halls' home. Rachael answered the door, and he asked to see her driver's license and insurance information to investigate the wreck. According to Trochesset, Rachael intended to comply with his instructions, and she went into the house to retrieve the requested items. At this time, Randal was approximately 90 miles away in El Campo, Texas.

When she came back to the door, she was on the phone with Randal. Randal wished to speak to Trochesset. According to Randal, he had a "respectful" conversation with Trochesset about why his wife would not be providing him the requested information and said he would be willing to provide the information in an alternative manner. Trochesset's version of the conversation is similar. He stated that after disclosing to Randal why he was there, Randal told Trochesset that he felt his wife and family would be unsafe if this information were disclosed and that he would instead give the information to the chief of police.

After the Halls refused to comply with the investigation, Trochesset left their home. He subsequently went to a Justice of the Peace and obtained

No. 23-40362

a Warrant of Arrest for Randal Hall based on the offense of interfering with public duties. A Complaint and Probable Cause Affidavit are associated with the Warrant of Arrest. Trochesset and Hall agree that the contents of the probable cause affidavit are consistent with the allegations in the lawsuit complaint, but the affidavit provides more specific details.

The Probable Cause Affidavit ("the Affidavit") states the following. While Trochesset was performing a duty or exercising authority imposed or granted by law, here a criminal investigation, Randal Hall, "with criminal negligence", interrupted, disrupted, impeded, or interfered with Trochesset by instructing his wife not to comply with Trochesset's investigation in violation of statute TRC 550.023.[2] Hall's actions were in violation of Interfere with Public Duties 38.15(g)[3] Penal Code MB, CJIS-73991084. Trochesset stated in the Affidavit that after he arrived at the Hall's home and asked Rachael for the requested information, she initially complied. However, she called her husband who wished to speak to Trochesset. Trochesset explained to Hall why he was there and that it was part of an investigation. Hall then told Trochesset that Rachael was previously stalked after an accident when her information was given. Randal informed Trochesset that he and Rachael would give her information to Chief Ratliff, but he would not let her give her license to someone with their home address on it. After Trochesset again explained to Hall that this was part of the ongoing investigation, Hall reiterated that Rachael would provide the information to Chief Ratliff but not Trochesset. For the third time, Trochesset explained the process to the Halls, but Hall again told Trochesset

---

[2] Duty to Give Information and Render Aid

[3] **(a)** "A person commits an offense if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with:**(1)** a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law[.]"

that his wife was not going to provide the requested information and that he was going to contact his attorney. After this back and forth, Randal instructed Rachael to only provide her cell phone number and nothing else to Trochesset. She then went into the home and locked the door.[4]

Trochesset asserted in the Affidavit that Randal interfered with his ability to conduct a proper investigation, which required obtaining Rachael's vehicle information and driver's license information, because he instructed Rachael to not provide the information to Trochesset. A warrant request was then completed for Interference with Public Duties.

On September 18, 2022, Appellant Randal Hall was arrested at his home pursuant to a warrant issued by a judge. The charges were dropped because the Galveston County District Attorney declined to prosecute the charge.

On October 3, 2022, Appellant filed suit against Appellees Officer Trochesset and the City of League City, Texas. The Complaint was amended one time on November 15, 2022. On December 5, 2022, Appellees jointly filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6).

On May 17, 2023, the district court entered a memorandum opinion and order granting Appellee's motion to dismiss and dismissed Appellant's suit. The district court entered a final judgment in favor of Appellees on that same day.

On June 13, 2023, Appellant filed a notice of appeal.

---

[4] The contents of this paragraph are cited solely from **ROA.141-142.**

## II.   DISCUSSION

We review de novo the district court's grant of the defendants' motion to dismiss. *McLin v. Ard*, 866 F.3d 682, 688 (5th Cir. 2017).

### A.    Liability Under 42 U.S.C. § 1983

Section 1983 provides a private right of action for the deprivation of certain rights, privileges, and immunities. 42 U.S.C. § 1983. As the district court properly stated, to prevail under a Section 1983 claim, the movant must allege that the defendant violated a "right secured by the Constitution and laws of the United States," and he must show that "a person acting under color of state law committed the alleged violation. *Petersen v. Johnson¸* 57 F.4th 225, 231 (5th Cir. 2023). The statutory or constitutional deprivation must also be due to deliberate indifference and not merely negligent acts. *Farmer v. Brennan*, 511 U.S. 825, 826. Claims under Section 1983 may be brought against government employees in their individual or official capacities or against a governmental entity. *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997).

Here, Hall argues that Trochesset violated the Fourth and Fourteenth Amendments because he arrested him without probable cause. He also argues that he was "chilled" from exercising his First Amendment right to speak with police officers and that the conversation over the phone, which was a protected activity under the First Amendment, was the *only* motivation for the arrest.

In this case, a Probable Cause Affidavit is associated with the arrest warrant that Trochesset properly acquired from a justice of the peace. Appellant did not challenge the contents of the Probable Cause Affidavit in his brief. However, he argued in his reply that the Court should not give factual deference to Trochesset's description of events in the Affidavit to the extent that it contradicts Appellant's pleadings unless the purported

contradictions align with favorable inferences to Appellant's pleadings. Despite this argument, Appellant stated during oral argument that he did not contradict the contents of the probable cause affidavit.

"The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed for every suspect released." *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979). "The Fourth Amendment requires that an arrest be supported by a properly issued arrest warrant or probable cause." *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001). "Under the prevailing view in this country a peace officer who arrests someone with probable cause is not liable for false arrest [even if] the innocence of the suspect is later proved." Pierson v. Ray, 386 U.S. 547, 555 (1967).

Our cases make clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause. See *Whren v. United States,* 517 U.S. 806, 812–813 (1996) (reviewing cases); *Arkansas v. Sullivan,* 532 U.S. 769, (2001) *(per curiam).* That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause. As we have repeatedly explained, "'the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.'" *Whren, supra,* at 813, (quoting *Scott v. United States,* 436 U.S. 128, 138 (1978)). "[T]he Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent." *Whren, supra,* at 814. "[E]venhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer." *Horton v. California,* 496 U.S. 128 (1990).

Probable cause to arrest "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014). It "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983). And in the qualified immunity context, "[e]ven law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

The district court properly found that probable cause existed in this matter pursuant to the independent intermediary doctrine. Under this doctrine, "even an officer who acted with malice ... will not be liable if *the facts* supporting the warrant or indictment are put before an impartial intermediary such as a magistrate or a grand jury, for that intermediary's 'independent' decision 'breaks the causal chain' and insulates the initiating party." *Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988) (quoting *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982)). The "chain of causation is broken only where all the facts are presented to the grand jury, or other independent intermediary where the malicious motive of the law enforcement officials does not lead them to withhold any relevant information from the independent intermediary." *Cuadra*, 626 F.3d at 813 (quoting *Hand*, 838 F.2d at 1428). The independent intermediary rule has one single, narrow exception, which arises "when 'it is obvious that *no* reasonably competent officer would have concluded that a warrant should issue.'" *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012) (emphasis added) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Further, the magistrate's mistake in issuing the arrest warrant must be "not just a reasonable mistake, but an unacceptable error indicating gross incompetence or neglect of duty." *Malley*, 475 U.S. at 346 n.9.

No. 23-40362

The independent intermediary doctrine applies here. Trochesset provided a Probable Cause Affidavit to a justice of the peace, who then issued an arrest warrant. The facts in the probable cause affidavit align with the facts presented by Hall. Hall has failed to present any argument showing Trochesset had malicious motive that led him to withhold any relevant information from the intermediary, thereby tainting the independent intermediary.

Nor has he shown that the single and narrow exception applies to the case here. This single and narrow exception is a high bar. Meeting this bar is difficult, and there is nothing here showing that no reasonably competent officer would have concluded that a warrant should issue. Accordingly, probable cause exists in this case, and Hall has failed to establish that Trochesset violated the Fourth or Fourteenth Amendments to the United States Constitution.

Hall's argument that he did not violate the interference statute because of the speech-only defense is without merit. First, Hall's actions violated Texas law when he interfered with Trochesset's investigation. Although Hall cited several cases that were not speech-only interference, this does not vitiate the fact that he interfered with the investigation. Hall also does not dispute that he interfered. Instead, he argues that his manner of interference did not give rise to probable cause warranting arrest, and that it further violated his First Amendment right to free speech. Importantly, however, this "speech-only" defense is a defense to prosecution under Texas criminal law (see Tex. Pen. Code § 2.03), which is of no consequence to the argument that probable cause is lacking. A defense that may be raised in future proceedings does not vitiate probable cause at the time of arrest.

8

Hall has failed to allege that Trochesset violated a "right secured by the Constitution and laws of the United States" and has failed to defeat the independent intermediary doctrine.

## B.    Qualified Immunity

Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Section 1983 claims are subject to qualified immunity. Under existing caselaw, officers are almost always entitled to qualified immunity when enforcing even an unconstitutional law so long as they have probable cause. *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979).

### (1)

Here, the district court found that there was no violation of a statutory or constitutional right by Trochesset because of the independent intermediary doctrine. This Court agrees with that finding. We will now determine whether there was a clearly established right.

### (2)

Thus, even if the arrest were constitutionally infirm, Trochesset is entitled to qualified immunity unless Hall can identify binding precedent that "placed the statutory or constitutional question beyond debate," so that "every reasonable official would have understood that what he is doing violates that right." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (internal quotations and citations omitted). "That is because qualified immunity is inappropriate only where the officer had fair notice—in light of the specific context of the case, not as a broad general proposition—that his *particular* conduct was unlawful." *Craig v. Martin*, 49 F.4th 404, 417 (5th Cir. 2022)

(internal quotation marks and citation omitted). In other words, "police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Kisela v. Hughes*, 584 U.S. ----, 138 (2018) (*per curiam)* (internal quotation marks and citation omitted).

Hall cites to *Malley v. Briggs*, 475 U.S. 335 (1986), to assert that there is a clearly established right here. He argues that even if the independent intermediary doctrine applies, then his claim is still successful under *Malley*. Specifically, Hall asserts that Trochesset was wrong in relying on the arrest warrant because his affidavit was "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." In *Malley*, the Supreme Court of the United States held that "the same standard of objective reasonableness that we applied in the context of a suppression hearing [] defines the qualified immunity accorded an officer whose request for a warrant allegedly caused an unconstitutional arrest. Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable the shield of immunity be lost." *Id.*, at 344-45. Thus, it must be determined whether a reasonably well-trained officer in Trochesset's position would have known that his affidavit failed to establish probable cause and that he should not have applied for such a warrant.

Hall argues that a reasonable officer in Trochesset's position would have known that probable cause did not exist because of the speech-only defense. This Court has held that the speech only defense exists pursuant to § 38.15. *Voss v. Goode.* 954 F.3d 234, 239 (5th Cir. 2020). This Court has further held, though, that an arrestee's command to another to disobey a police officer's lawful order does not fall within the speech defense.[5] *Id.* The

---

[5] And "fail[ing] to comply with an officer's instruction, made within the scope of the officer's official duty and pertaining to physical conduct rather than speech" can also

facts show that Hall told Trochesset three times that his wife was not going to provide the requested information. Hall also instructed his wife not to comply with the requests of Trochesset, which led to her going inside the house and shutting the door on Trochesset. Thus, an officer in Trochesset's position could reasonably believe that Appellant's conduct did not fall within the speech defense.

Accordingly, even if Hall's actions did fall within the clearly established law of the speech defense, which the facts indicate they did not, then Trochesset is still shielded by the independent intermediary doctrine.

Thus, Hall has failed to state plausible claims against Trochesset that overcome his qualified immunity defense.

## C.    Municipal Liability

Next, Hall asserts liability on the City of League City, Texas, based upon *Monell* liability. In *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978), the Supreme Court of the United States found that municipalities can be held liable for the constitutional violations which arise from enforcement of the municipalities policies and procedures, but the municipality cannot be held liable for constitutional torts of their employees under the doctrine of respondeat superior. To hold a municipality liable under § 1983, a plaintiff must identify (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that of policy or custom. *Monell*, 436 U.S. at 694.

---

constitute interference. *Childers v. Iglesias*, 848 F.3d 412, 415 (5th Cir. 2017) (describing the state of the law as of September 2013).

First, because there was no constitutional violation by Trochesset, there can be no liability against League City. *Windham v. Harris Cty.*, Texas, 875 F.3d 229, 243 (5th Cir. 2017).

Second, Hall has not identified an official policy or custom of League City that was the moving force or cause of the alleged violation. Hall instead asserts that there was a "need for a policy" and an absence of or failure to adopt an appropriate policy. Specifically, Hall asserts that there was a lack of training or insufficient training on the boundaries of the interference statute, a widespread pattern or practice of arrests based on speech-only interference charges, and ratification of Trochesset's actions both by conducting and reviewing the arrest. Hall asserts that he is unable to point to a specific policy because the information is possessed solely by the City, and he cannot access it because discovery has not been conducted. Insofar as Hall makes this "policy" argument as it relates to municipal liability, he is unable to show how the policy or lack thereof "caused" his arrest. As stated above, there was probable cause to make this arrest, so, again, this argument is defeated by the independent intermediary doctrine.

Hall has failed to allege facts stating a plausible claim for relief against the City of League City, Texas, under municipal liability.

### D.     Whether this Court Should Discontinue Application of the Qualified Immunity Doctrine

Finally, Hall argues that this Court should discontinue the application of the principles of the qualified immunity doctrine. The Supreme Court of the United States has interpreted § 1983 to give absolute immunity to functions "intimately associated with the *judicial* phase of the criminal process," *Malley*, 475 U.S. 335, 342, *quoting Imbler, supra,* at 430 (emphasis added), not from an exaggerated esteem for those who perform these functions, and certainly not from a desire to shield abuses of office, but because any lesser degree of immunity could impair the judicial process itself.

*Briscoe v. LaHue,* 460 U.S. 325, 334–335 (1983). We intend no disrespect to the officer applying for a warrant by observing that his action, while a vital part of the administration of criminal justice, is further removed from the judicial phase of criminal proceedings than the act of a prosecutor in seeking an indictment. The prosecutor's act in seeking an indictment is but the first step in the process of seeking a conviction. Exposing the prosecutor to liability for the initial phase of his prosecutorial work could interfere with his exercise of independent judgment at every phase of his work because the prosecutor might come to see later decisions in terms of their effect on his potential liability. Thus, we shield the prosecutor seeking an indictment because any lesser immunity could impair the performance of a central actor in the judicial process.

Hall argues that qualified immunity is a "legal fiction" that came from a faulty interpretation of Section 1983 and describes modern qualified immunity as "*counter*textual". Specifically, Appellant states that decisions that are not the type of "split-second, heat-of-the-moment choices" made by officers in a dangerous situation should not be afforded the same protections. Hall asserts that Trochesset had ample time to check the legality of his actions in this case and therefore should not avoid liability because he chose not to do so.

Trochesset urges that this Panel should not exercise authority to overrule Supreme Court precedent to abolish the doctrine of qualified immunity. He argues that qualified immunity is an element of a claim against an executive branch official and should not be eliminated by any appellate court.

Trochesset's argument is correct, and this Panel will continue to employ the use of the doctrine of qualified immunity. This panel is bound by the Fifth Circuit rule of orderliness, "that one panel of this court may not

No. 23-40362

overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or *en banc* court." *Jacobs v. National Drug Intelligence Center*, 548 F.3d 375 (5th Cir. 2008).

## III.  CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.