# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 21, 2023

Lyle W. Cayce
Clerk

———————

No. 21-51105

———————

Ernest C. Trevino,

*Plaintiff—Appellee*,

*versus*

Derek Iden, *Agent*; John Brauchle, *Agent*,

*Defendants—Appellants*.

———————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:17-CV-1133

———————————————————————

Before Wiener, Higginson, and Wilson, *Circuit Judges*.
Stephen A. Higginson, *Circuit Judge*:

Defendants Derek Iden and John Brauchle, game wardens with the Texas Parks and Wildlife Department, appeal the district court's denial of qualified immunity as to plaintiff Ernest Trevino's § 1983 claims against them. Because we conclude that Trevino has not plausibly alleged that Iden and Brauchle violated his constitutional rights, we REVERSE and RENDER judgment for the defendants.

No. 21-51105

## I.

In 2016, plaintiff-appellee Ernest Trevino leased a piece of land in Atascosa County, Texas.[1]  Trevino then placed an advertisement on Craigslist offering the opportunity to hunt on the property in exchange for a truck.  Two men, Kurt Stern and Bobby Wied, responded to the advertisement.  In exchange for permission to hunt on the property, Stern and Weid paid $400 in cash and agreed to deliver a jet ski to Trevino.  Stern delivered the jet ski and its certificate of title to the property but did not sign the back of the title so as to transfer title to Trevino.  Wied also provided Trevino with taxidermy services.  Stern and Wied hunted on the property from October through December 2016.

On January 5, 2017, Wied and Stern complained to the Texas Parks and Wildlife Department ("TPWD") that Trevino was engaged in illegal hunting activities on the leased property.  Wied also complained that during a dispute with Trevino in late 2016, Trevino had brandished a long-rifle and

---

[1] This is an appeal of the denial of a Rule 12(b)(6) motion to dismiss.  Our analysis is therefore governed by the facts as alleged in plaintiff's operative pleading, which here is Trevino's Fourth Amended Complaint. *See Harmon v. City of Arlington*, 16 F.4th 1159, 1162 (5th Cir. 2021) (citation omitted).  But we may consider non-complaint material submitted by 12(b)(6) movants if the documents are "referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citation omitted).  Here and in the district court, defendants cite two documents from outside the complaint: an Internal Affairs case report from the Texas Parks & Wildlife Department ("TPWD"), and a "Prosecutor's Summary" prepared by Iden and Brauchle, which the parties call the "prosecution guide."  Trevino does not object to the court's consideration of this material, and we find it appropriate to consider the documents because both documents are referred to repeatedly in Trevino's complaint, and both are central to his claims regarding the defendants' investigation of him. *Id.*

thereby committed the offense of deadly conduct.[2]  Wied later recanted the deadly-conduct allegation.

TPWD game wardens Derek Iden and John Brauchle, defendants-appellants in this case, investigated the complaint.  Their investigation culminated in three distinct allegations of criminal conduct by Ernest Trevino: (1) illegal hunting activities, (2) forgery with respect to the title of the jet ski, and (3) forgery with respect to the title of a Chevrolet pickup truck. We summarize each allegation in turn.

First, Iden and Brauchle found that Trevino did not have permission from the owners of the property to sell hunting opportunities on the land and did not have a hunting-lease license that might permit the sale.  The Texas Parks and Wildlife Code prohibits hunting on land without the landowner's consent, TEX. PARKS & WILD. CODE § 61.022(a), and further provides that the owner of a hunting lease "may not receive as a guest for pay or other consideration another person engaged in hunting unless the owner or agent has acquired a hunting lease license from the department," *id.* § 43.042.

Second, Iden and Brauchle learned that Trevino later traded the jet ski that he received from Stern to a man named Trung Nguyen in exchange for a Dodge pickup truck.  On January 17, 2017, Nguyen gave a sworn statement that when Trevino came to his house to make the exchange and transfer title, Nguyen saw Trevino sign the back of the jet-ski title.  The name on the back of the title was "Kurt Stern."  *See Trevino v. State*, 608 S.W.3d 344, 348 (Tex. App. 2020) (summarizing Nguyen's testimony at Trevino's

---

[2] Under Texas law, deadly conduct is the "reckless[] engage[ment] in conduct that places another in imminent danger of serious bodily injury." TEX. PENAL CODE § 22.05(a).  "Recklessness and danger are presumed if the actor knowingly pointed a firearm at or in the direction of another." *Id.* § 22.05(c).

forgery trial). Iden and Brauchle identified this information as supporting a felony charge of forgery. *See* TEX. PENAL CODE § 32.21(b) & (e)(2).

Third, through the use of a search warrant on Trevino's phone records, Iden and Brauchle came into contact with a man named Brian Russell, who had bought a 2000 Chevrolet pickup truck from Trevino. On March 23, 2017, Russell attested in a sworn and signed statement that, with respect to the truck transfer, he thought he witnessed Trevino sign the application for Texas title using the name "John Bissett." The truck's certified title history revealed that John Bissett was a prior owner of the truck in New Mexico. Trevino alleges that Bissett had sold the truck in February of 2016 and that the truck had changed hands multiple times before it reached Trevino. Iden and Brauchle identified Trevino's signature of Bissett's name as a violation of Texas Transportation Code § 501.155, which prohibits a person from "knowingly provid[ing] false or incorrect information or without legal authority sign[ing] the name of another person on . . . an application for a title." TEX. TRANSP. CODE § 501.155(a)(1).

Iden and Brauchle summarized the findings from their investigation in a "prosecution guide." The guide, sent to the District Attorneys of Atascosa and Bexar Counties, requested that the case be reviewed by prosecutors and, "if [their] office is in agreement," that the case be presented to a grand jury for indictment. The guide primarily covers the illegal-hunting allegations and the forgery allegation with respect to the transfer of the jet ski. It refers once to the "Transportation Code case," *i.e.*, the forgery with respect to the Chevy truck, but states that the investigation "is detailed in a

4

separate case package because it was not related to any hunting activity" on the properties at issue.[3]

On September 15, 2017, Trevino was indicted by an Atascosa County grand jury for hunting without the landowner's consent (the "first indictment"). Appellants tell us that this case was dismissed in 2019. On September 25, 2017, Trevino was indicted by a Bexar County grand jury for forgery of a government document in relation to the jet-ski transfer to Trung Nguyen (the "second indictment"). Trevino was convicted at trial but had his conviction overturned on appeal in 2020 because the government had failed to prove that Trevino acted with an intent to defraud. *Trevino*, 608 S.W.3d at 354. On December 15, 2017, Trevino was indicted by an Atascosa County grand jury for forgery in relation to the truck transfer to Brian Russell (the "third indictment"). Appellants tell us that this case was later dismissed.

In the meantime, Trevino began submitting complaints to TPWD alleging misconduct by Iden and Brauchle. The first such complaint was on January 24, 2017, a few weeks after Iden and Brauchle started their investigation. Trevino alleged that Iden was using his official position to intimidate and harass him and his neighbors because of Iden's friendship with Bobby Wied, whose complaint had initiated the investigation. On March 28, Trevino submitted an open records request to TPWD. On April 27, he requested an independent investigation into Wildlife Major Jonathon Gray, one of the internal investigators of Trevino's complaints, because Gray and Iden had been classmates in the training academy. In May, Trevino submitted more complaints, alleging that Iden and Brauchle were "spreading

---

[3] Our record does not contain this "separate case package" describing the truck-forgery investigation.

disinformation" about Trevino to his neighbors. Trevino also alleges that, while investigating, Iden would improperly interview witnesses before recording them so he could "poison[] witnesses" against him, and then redo the interview while recording. In July, TPWD Internal Affairs informed Trevino that his complaints against Iden and Brauchle had been dismissed. Trevino continued to submit open records requests and complaints, including to Governor Greg Abbott and a state representative, throughout the rest of 2017, as well as through 2018 and 2019.

On November 6, 2017, Trevino filed this lawsuit, *pro se*, in the United States District Court for the Western District of Texas, naming as defendants TPWD, Iden, Brauchle, and other individual officers. The case was referred to a magistrate judge. Trevino, later assisted by counsel, amended his complaint multiple times and ultimately alleged claims under 42 U.S.C. § 1983 and state law. On January 16, 2021, Iden, Brauchle, and other individual officers moved to dismiss Trevino's then-latest complaint, asserting that Iden and Brauchle were entitled to qualified immunity. The magistrate judge issued a Report & Recommendation ("R&R"), recommending dismissal of Trevino's claims as to some officers, as well as dismissal of all state-law claims. As to Iden and Brauchle, the magistrate judge granted Trevino leave to (1) replead his First Amendment retaliatory-prosecution claim to cure a deficiency and to (2) replead to specify the constitutional basis—Fourth Amendment or Fourteenth Amendment—for his wrongful-prosecution claim. Iden and Brauchle objected to the R&R, but the district court summarily adopted the R&R over their objections.

Trevino then filed a Fourth Amended Complaint, asserting only § 1983 claims against defendants Iden and Brauchle. Trevino alleged that Iden and Brauchle had violated his First Amendment rights by retaliating against him for filing grievances against them and seeking open records, and had otherwise violated his civil rights by pursuing three criminal prosecutions

without probable cause.  Trevino did not specify the constitutional text supporting the latter claim.

On June 4, 2021, Iden and Brauchle again moved to dismiss the complaint on the basis of qualified immunity.  As to the First Amendment retaliation claim, the magistrate judge recommended granting the motion in part and denying it in part.  The court noted that Trevino's allegedly protected activity—his grievances and public-records requests—did not begin until *after* Iden and Brauchle had already initiated their investigation of Trevino, so it was improbable that their conduct was retaliatory as to Trevino's complaints.  Because both the first and second indictments resulted from this investigation, Trevino could not maintain a retaliatory-prosecution claim as to those two indictments.  The magistrate judge thus recommended dismissing the retaliation claim vis-à-vis the first and second indictments.

But, according to the magistrate judge, the third indictment appeared "wholly attenuated from the initial investigation," supporting the inference that Trevino's protected activity was a but-for cause of that prosecution.  The magistrate judge thus recommended denying the motion to dismiss as to the retaliation claim vis-à-vis the third indictment.

With respect to the wrongful-prosecution claim, the magistrate judge noted that while Trevino had not heeded its previous instruction that he specify whether his wrongful-prosecution claim was a Fourth or Fourteenth Amendment claim, his complaint "appear[ed] to state a Fourteenth Amendment claim."  The court permitted Trevino to proceed on this claim, "construed as an allegation of prosecution without due process under the Fourteenth Amendment."

Iden and Brauchle again objected to the R&R, but again the district court summarily adopted the R&R over their objections, confining both of

No. 21-51105

Trevino's claims to the third indictment only.  Iden and Brauchle timely appealed.


## II.

Because qualified immunity is a defense to both liability and the obligation "to stand trial or face the other burdens of litigation," a district court's denial of qualified immunity is appealable despite the absence of a final judgment.  *Ashcroft v. Iqbal*, 556 U.S. 662, 671–72 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  We therefore have jurisdiction over the officers' appeal.

We review *de novo* a district court's denial of 12(b)(6) dismissal on the basis of qualified immunity.  *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc).  In conducting this review, the plaintiff's well-pleaded facts are accepted as true.  *Harmon*, 16 F.4th at 1162 (citation omitted).  But we do not accept as true legal conclusions, mere labels, conclusory statements, or "naked assertions devoid of further factual enhancement."  *Id.* at 1162–63 (quoting *Iqbal*, 556 U.S. at 678).


## III.

Iden and Brauchle assert that they are entitled to qualified immunity. To defeat a defendant's assertion of qualified immunity, the plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct."  *Shaw v. Villanueva*, 918 F.3d 414, 417 (5th Cir. 2019) (quoting *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013)).  Again, with respect to both the retaliatory-prosecution and wrongful-prosecution claims, only Trevino's third indictment is at issue.

No. 21-51105

For the following reasons, we conclude that Trevino's claims fail at the first prong of the qualified-immunity inquiry. We therefore do not reach whether he has identified "clearly established law," as required by the second prong.

Iden and Brauchle assert that they have not violated a constitutional right because they are protected by the independent-intermediary doctrine. The independent-intermediary doctrine "becomes relevant when . . . a plaintiff's claims depend on a lack of probable cause." *Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548, 553 (5th Cir. 2016) (citations omitted). Here, both of Trevino's claims implicate the doctrine because both depend on an absence of probable cause to prosecute him. His First Amendment retaliatory-prosecution claim requires him to plead and prove the absence of probable cause supporting the underlying criminal charge. *Hartman v. Moore*, 547 U.S. 250, 263 (2006); *see also Keenan v. Tejeda*, 290 F.3d 252, 260 (5th Cir. 2002) ("[R]etaliatory criminal prosecutions in violation of the First Amendment are actionable only if a plaintiff can also prove the common-law elements of malicious prosecution, including the absence of probable cause to prosecute." (citations omitted)). The same is true for his second claim, which has been construed as a Fourteenth Amendment claim for "prosecution without probable cause." And while Iden and Brauchle contend that this claim should instead be asserted under the Fourth Amendment, such a claim would similarly require the absence of probable cause. *See Thompson v. Clark*, 142 S. Ct. 1332, 1337 (2022) ("[T]he gravamen of the Fourth Amendment claim for malicious prosecution . . . is the wrongful initiation of charges without probable cause.").

Under the independent-intermediary doctrine, "if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation . . .

9

No. 21-51105

insulating the initiating party."[4] *Wilson v. Stroman*, 33 F.4th 202, 208 (5th Cir. 2022) (quoting *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017)).

Here, Iden and Brauchle presented the results of their investigation to the Atascosa County District Attorney in May of 2017. In December, a grand jury indicted Trevino in Case Number 17-12-0654 in the 81st Judicial District Court in Atascosa County. This grand jury qualifies as an independent intermediary,[5] whose "decision breaks the chain of causation" and, absent

---

[4] The independent-intermediary rule is often articulated in terms of probable cause for arrest because most of the cases involve false-arrest claims. *E.g.*, *Buehler*, 824 F.3d at 553–54; *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010); *Russell v. Altom*, 546 F. App'x 432, 436-37 (5th Cir. 2013). But the doctrine's application is not confined to claims styled as false arrest. *See, e.g.*, *Curtis v. Sowell*, 761 F. App'x 302, 304 (5th Cir. 2019) (applying the doctrine to a Fourth Amendment claim for "arrest[] and prosecut[ion]" without probable cause and a First Amendment claim for retaliatory prosecution); *see also Shields v. Twiss*, 389 F.3d 142, 150 (5th Cir. 2004) (including "malicious prosecution" among plaintiff's § 1983 claims and resolving the issue under the independent-intermediary doctrine).

[5] Fifth Circuit law is inconsistent as to whether the District Attorney may also be an independent intermediary whose charging decision breaks the chain of causation. In *Cuadra*, we wrote that "both [the DA] and two separate grand juries qualified as independent intermediaries" and proceeded to assess whether the plaintiffs had challenged "[the DA's] independent decision to seek . . . indictments or either grand jury's decision to return the indictments." 626 F.3d at 813. But the *Cuadra* court assumed without discussion that the DA—in many ways not analogous to the prototypical "magistrate or grand jury" contemplated by the doctrine—qualifies as an intermediary. And in *Russell v. Altom*, an unpublished per-curiam decision that postdates (and cites) *Cuadra*, the court expressly rejected the proposition that the DA counts under the doctrine. The *Russell* panel wrote that "prosecutors are often involved in charging decisions, and they themselves are not the 'impartial intermediary' capable of insulating an officer from liability—that is the grand jury to whom the prosecutor, an inherently biased party, presents the information." 546 F. App'x 432, 437 (5th Cir. 2013). *Russell*'s "impartiality" requirement finds support in the caselaw. *See, e.g.*, *Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988) (referring to "an impartial intermediary"). In any event, we need not resolve the issue here because the grand jury that indicted Trevino indisputably qualifies as an independent (and "impartial") intermediary. Whether the DA also counts has no bearing on the outcome of this case.

an exception to the doctrine, insulates Iden and Brauchle from liability as the initiating parties. *See id.*

Trevino argues that this case falls within the doctrine's "taint" exception. Under this exception, an officer loses his protection from liability if he "withhold[s] any relevant information or otherwise misdirect[s] the independent intermediary by omission or commission." *McLin*, 866 F.3d at 689 (citation omitted). "To satisfy the taint exception, omissions of exculpatory information must be 'knowing.'" *Buehler*, 824 F.3d at 555 (cleaned up) (quoting *Cuadra*, 626 F.3d at 813–14). Our case law also imposes a materiality requirement—that is, even knowing misstatements or omissions will not satisfy the taint exception if the misstated or omitted information would not have altered the intermediary's probable-cause finding. *Id.* at 555–56 (rejecting the plaintiff's invocation of the taint exception because his evidence "d[id] not show that the grand jury's findings of probable cause . . . were tainted by the officers' knowing misstatements or omissions," and noting that the alleged inconsistencies in the evidence against him were "not material to the grand jury's findings of probable cause"); *see also Loftin v. City of Prentiss*, 33 F.4th 774, 782 (5th Cir. 2022) (noting that, in the context of a warrant affidavit that allegedly omitted material information, an officer is not protected if he "taints the intermediary's decision by 'deliberately or recklessly providing false, *material* information for use in an affidavit'" (cleaned up) (citation omitted) (emphasis added)). At the motion-to-dismiss stage, "mere allegations of taint" may be adequate "where the complaint alleges other facts supporting the inference." *McLin*, 866 F.3d at 690.

Accordingly, to avoid application of the independent-intermediary doctrine and state a constitutional violation against Iden and Brauchle, Trevino must plausibly allege, with facts supporting the inference, that Iden and Brauchle tainted the deliberations of the grand jury that returned the

third indictment.    In invoking the exception, Trevino argues that his "pleading includes many instances [when] Appellants either withheld information from or provided false information to the various prosecutors," and then cites multiple paragraphs from his complaint.  But our review of Trevino's complaint reveals no viable allegations of taint as to the third indictment.

Nearly all the allegations that Trevino cites as supporting the taint exception correspond to his first and second indictments, which are not at issue here.  Specifically, Trevino alleges, *inter alia*, that Iden initially denied to TPWD Internal Affairs that he knew Bobby Wied and later recanted that claim, admitting that Wied had mounted ducks for him.  Trevino also alleges that Wied later recanted his deadly-conduct allegation against Trevino, and that Iden did not disclose Wied's "lack of veracity" to the prosecutors.  But Wied's reliability as the complaining witness and his connection to Iden are relevant only—if at all—to the first and second indictments.  The truck-forgery allegation underlying the third indictment has no discernible connection to Wied.

Similarly, Trevino alleges that Iden knew that Trevino had permission from agents of the property owner to hunt on the property.  He also alleges that, when shown a map and asked where they had hunted, Stern and Wied did not identify the relevant property.  Here, setting aside that Trevino fails to allege that Iden and Brauchle withheld this information from the intermediary, these allegations pertain only to the first indictment.

Trevino also alleges that Iden and Brauchle falsely stated in their prosecution guide that Trung Nguyen, the purchaser of the jet ski, was unable to title the jet ski in his name or register it without Kurt Stern's signature.  Trevino also alleges that Stern said in a written statement to Iden that he had attempted three times to transfer title of the jet ski to Trevino and

that Iden concealed this fact from prosecutors.  These allegations relate to the second indictment.

Finally, Trevino alleges that Iden improperly influenced witnesses while investigating.  Specifically, he alleges that Iden "would speak with witnesses first without recording or documenting his contacts," and that "if the witness gave damaging information, Iden would then re-interview and record his interview," and "strongly suggest to the witness what to say to support prosecuting [Trevino]."  But Trevino does not connect this allegation of witness "poison[ing]" with the third indictment.  Indeed, the investigation underlying the third indictment involved only one witness, discussed *infra*, and Trevino does not allege that Iden or Brauchle influenced that witness's statements.

Because the foregoing allegations relate only to the first and second indictments, which are not at issue here, they cannot support application of the taint exception to the independent-intermediary doctrine as to the third indictment.

We turn, finally, to Trevino's allegations regarding the third indictment, in search of any plausible allegation that Iden or Brauchle tainted the deliberations or decision of the grand jury.

Trevino asserts that Iden submitted to the DA a prosecution guide alleging that Trevino "violated Tex. Transportation Code § 501.155 by purportedly signing an application for Texas Title without the legal authority of John Bissett."  He claims that Iden "included a certified copy of a Texas Motor Vehicle Title history for a 2000 Chevrolet pickup truck," and that the "certified title history reveal[ed]" that Bissett endorsed the truck title in New Mexico in February of 2016.  Trevino asserts that, after Bissett endorsed the title, "he had no authority over the commercial paper, namely, the title or the vehicle," and thus "lacked standing to complain about the title

eight months later when it reached [Trevino]'s hands." According to Trevino, therefore, when Iden sought and obtained the third indictment, he "kn[ew] an element of the offense was missing"—namely, that Trevino lacked Bissett's legal authority.

Trevino also alleges that Brian Russell, the man who purchased the truck from Trevino, "could not identify with certainty that [Trevino] signed the application for Texas Title as alleged." Russell had said in a signed and sworn statement: "I highlighted in yellow a copy of the 'Application for Texas Title' the man wrote in my presence. I thought he signed his name, John Bissett."

Next, Trevino alleges that Iden did not, as part of his investigation, collect handwriting samples from Trevino and have a handwriting expert analyze them alongside the alleged forgery. He alleges that Iden thus "knew before he sought an indictment that the State could not prove the element that it was [Trevino] who signed the application for vehicle title." Trevino further alleges that he submitted handwriting examples to an expert whose professional opinion was that the signature on the application was not penned by Trevino.

Finally, Trevino alleges that, had there been an irregularity in the application for title, the Texas Department of Motor Vehicles would have rescinded the truck's registration, but no such recission ever happened.

Taken together and distilled to their essentials, Trevino's taint allegations as to the truck-forgery investigation and indictment are threefold. First, Bissett had relinquished his legal claim to the truck, meaning that Trevino did not act without Bissett's legal authority. Second, the State could not have proven that Trevino signed the application because (i) Russell only "thought" that he saw Trevino sign Bissett's name and could not say so with certainty and (ii) neither defendants nor the DA obtained an analysis by a

handwriting expert. And third, the absence of a recission of title by the DMV undermined the allegation.

These allegations do not avail Trevino of the taint exception to the independent-intermediary doctrine. Critically, even accepting all of the above allegations as true, Trevino does not allege that Iden and Brauchle "withh[eld]" any of this information or "otherwise misdirect[ed] the independent intermediary" along these lines. *McLin*, 866 F.3d at 689. He further fails to allege that any such omission was "knowing." *Buehler*, 824 F.3d at 555.

Indeed, at least with respect to his allegation that Bissett had no legal claim to the truck, Trevino *denies* that Iden and Brauchle withheld this information. He writes in his complaint that defendants' prosecution guide "*included*" the certified title history, which allegedly "reveal[ed]" that Bissett "had no authority over the commercial paper" and therefore "lacked standing to complain." Similarly, Trevino alleges that "[t]he State's file . . . indicates John Bissett delivered the truck and title of the truck to his agent to sell the truck." These allegations negate the inference that Iden and Brauchle tainted the grand jury's decision by withholding facts surrounding Bissett's relinquishment of the truck, and indeed suggest that the intermediary considered the evidence that Trevino holds out as exculpatory.

Moreover, even if Trevino had alleged—though he does not—that the officers knowingly failed to disclose that (i) the State lacked firm proof that Trevino signed the application and (ii) the DMV never rescinded the truck's title, the truth of these allegations would be immaterial to the grand jury's probable-cause finding. *See Buehler*, 824 F.3d at 555. Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (quoting *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983)); *see also*

*Buehler*, 824 F.3d at 556 n.8 ("Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." (quoting *United States v. Ramirez*, 145 F.3d 345, 352 (5th Cir. 1998))). Trevino's arguments here go to the weight of the evidence and the ultimate strength of the State's case against him. Trevino does not allege through these assertions that the grand jury might have declined to indict him were it not for defendants' actions. As we explained in *Buehler*, our court has rejected taint arguments where, for example, the prosecutor did not present potentially exculpatory evidence to the grand jury because "the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge." *Id.* at 556 (quoting *Russell v. Altom*, 546 F. App'x 432, 437 (5th Cir. 2013)). Russell's credibility as an eyewitness, the findings of a handwriting expert, and the implications of the absence of a DMV title recission are matters suited for a trial of Trevino's guilt, not the grand jury's inquiry into whether to indict him.

Because Trevino does not allege that Iden and Brauchle knowingly withheld relevant, material information from the grand jury, he has not shown that the independent intermediary's deliberations or decisions were tainted. Accordingly, the independent-intermediary doctrine defeats Trevino's allegations that there was no probable cause to prosecute him and insulates Iden and Brauchle from liability. This conclusion applies with equal force to Trevino's claims for both retaliatory prosecution and prosecution without probable cause.

Because Trevino has not stated a constitutional violation, he fails at prong one of the qualified-immunity analysis. *Shaw*, 918 F.3d at 417. Iden and Brauchle are therefore entitled to qualified immunity.

No. 21-51105

## IV.

We accordingly REVERSE the order of the district court and RENDER judgment for Iden and Brauchle.