# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 3, 2025

Lyle W. Cayce
Clerk

————————

No. 24-60314

————————

Desmond D. Green,

*Plaintiff—Appellee*,

*versus*

Jacquelyn Thomas, *Detective*,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:23-CV-126

_____

Before Higginbotham, Willett, and Ho, *Circuit Judges*.

Don. R. Willett, *Circuit Judge*:[*]

This is a qualified immunity case about a man wrongfully accused of murder. Detective Jacquelyn Thomas took a statement from a jailhouse informant who was under the influence of illicit drugs. That statement implicated Desmond Green in an ongoing murder case. Green alleges that Detective Thomas then manipulated a photo lineup with the informant and withheld crucial exonerating evidence from the grand jury. As a result,

_____

[*] Judge Ho concurs in the judgment.

No. 24-60314

Green—an innocent man—spent nearly two years in jail before the informant recanted his statement and admitted he was "just high" and "try[ing] to . . . get out of jail." Green sued Detective Thomas for violating his Fourth and Fourteenth Amendment rights, and the district court denied Detective Thomas qualified immunity at the motion-to-dismiss stage. We AFFIRM in part and REVERSE in part.

I

In February 2020, someone shot and killed Nicolas Robertson in Jackson, Mississippi. Two months later, law enforcement arrested Samuel Jennings for burglary and grand larceny. Once Jennings was jailed, he provided a handwritten, signed statement about the Robertson murder to Jackson Police Department Detective Jacquelyn Thomas. In that statement, Jennings wrote that Green confessed in front of him that he shot Robertson and, with assistance from others, moved Robertson's body. Although Green said he didn't know Robertson and was not involved, a grand jury indicted Green for capital murder in July 2020. Green was subsequently arrested and detained in Raymond Detention Center, operated by Hinds County.

In March 2022—nearly two years after the indictment and arrest—Jennings recanted his statement to Detective Thomas. Jennings admitted he had consumed methamphetamine in the one to two hours prior to his April 2020 statement to Detective Thomas; he did "not know why he said [] Green was involved in the capital murder"; he was in the hospital on the day Robertson was killed; and he had "no knowledge of what happened to" Robertson. He also swore he "made a false statement" about Green, he picked a different photo in the lineup than the detective pointed to, and he was "[j]ust high and try [sic] to help myself get out of jail."

No. 24-60314

On April 21, 2022, after the prosecutor moved to "remand," the presiding judge dismissed the case. Green was released from jail after 22 months of detention.[1]

Green then sued Detective Thomas and the city[2] in February 2023. He filed claims under 42 U.S.C. § 1983, arguing Detective Thomas violated his Fourth and Fourteenth Amendment rights, as well as Mississippi law, and alleging "malicious prosecution and malicious arrest without probable cause." Of note, Green alleged that Detective Thomas withheld exonerating evidence from the grand jury, including: Robertson, after being shot in one location, was conscious when he arrived at a different location where he was later found dead; Robertson was with another man (not Green) "shortly before" the shooting; and information pertaining to Jennings's unreliability (including drug use and criminal activity). Green also alleged that Jennings selected a photo of a different suspect in Detective Thomas's photo lineup. Jennings's recantation—attached to Green's complaint—provides added detail: Detective Thomas pointed to the photo of Green after Jennings had identified a different suspect.

Detective Thomas filed a motion to dismiss based on qualified immunity. The district court denied qualified immunity and commented that qualified immunity is "an unconstitutional error."[3] The district court then stayed all other claims to permit Detective Thomas to seek interlocutory

---

[1] As the district court noted, Green's complaint alleges he was incarcerated for two years and three months. But July 2020 (when Green was indicted) to April 2022 (when Green was released) is less than two years.

[2] This appeal involves only Detective Thomas's motion to dismiss based on qualified immunity.

[3] *Green v. Thomas*, 734 F. Supp. 3d 532, 540 (S.D. Miss. 2024).

No. 24-60314

review. Detective Thomas appealed, seeking review of the denial of qualified immunity and the application of the independent-intermediary doctrine.[4]

## II

"Jurisdiction is always first."[5] Green contends that we lack jurisdiction because "there has been no [] certification and approval" by the district court and circuit court for an interlocutory appeal and because the district court's decision was not final. But the district court's order specifically stayed the case "so that Detective Thomas can exercise her right to an immediate interlocutory appeal."[6] And regardless, "certification and approval" are not necessary for denials of qualified immunity when those denials turn on questions of law.[7] When officers "contend that their conduct did not violate the Fourth Amendment" or "clearly established law," as Detective Thomas does here, "they raise legal issues" that may be appealed.[8]

––––––––––––––––––––

[4] Detective Thomas does not appear to appeal the denied dismissal of Green's state-law claim, for which she did not assert qualified immunity as a defense, and has thus waived any such argument. *See Brown v. Miller*, 519 F.3d 231, 239 (5th Cir. 2008) (finding waiver because plaintiff "has not argued that he has qualified immunity against the state law claims under the Louisiana law of qualified immunity" and "argues only the federal law of qualified immunity in his motions to dismiss before the district court and in his appellate briefs"). To the extent she appeals the application of the independent-intermediary doctrine to Green's state-law claims, the analysis is the same. *See post*, at 15–18.

[5] *Arulnanthy v. Garland*, 17 F.4th 586, 592 (5th Cir. 2021) (quotation omitted).

[6] *Green*, 734 F. Supp. 3d at 569.

[7] *See, e.g.*, *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) ("[W]e hold that a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment."); *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009).

[8] *Modacure v. Short*, No. 22-60546, 2023 WL 5133429, at *1 (5th Cir. Aug. 10, 2023) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 773 (2014)).

Accordingly, we have "jurisdiction to review orders denying qualified immunity" under the collateral-order doctrine and 12 U.S.C. § 1291.[9]

Green argues that the district court erred for two additional reasons, which he suggests bear on jurisdiction. First, staying the case pending appeal gives a "windfall" to the other city defendants: "[G]iving qualified immunity to [Detective Thomas] gives the political subdivision Defendants the benefit of qualified immunity, which is to delay the case for an undetermined time." And second, the federal constitutional torts are also actionable as state-law torts, which Green has alleged but for which Detective Thomas did not assert any immunity—and therefore, Detective Thomas "will be saved nothing, regardless of the outcome of this appeal." But as Green acknowledges, the Supreme Court has held that the addition of state-law tort claims to the suit—as here, Mississippi malicious prosecution—does not foreclose appealability for federal claims.[10] Indeed, "[t]he *Harlow* right to immunity is a right to immunity from certain claims, not from litigation in general," so when a court denies qualified immunity, "appeal must be available," regardless of what other claims and parties remain in litigation.[11] Though we recognize Green's concern for judicial resources, we follow the Supreme Court's grant of interlocutory appeals in denials of qualified immunity.[12]

---

[9] *Carswell v. Camp*, 54 F.4th 307, 310 (5th Cir. 2022) (first citing *Backe v. LeBlanc*, 691 F.3d 645, 647–49 (5th Cir. 2012); then citing *Mitchell*, 472 U.S. at 526–27); *see also Trevino v. Iden*, 79 F.4th 524, 530 (5th Cir. 2023) (citations omitted); *Asante-Chioke v. Dowdle*, 103 F.4th 1126, 1128 (5th Cir. 2024), *cert. denied sub nom. Asante-Chioke v. Dowdle*, No. 24-387, 2025 WL 76452 (U.S. Jan. 13, 2025).

[10] *See Behrens v. Pelletier*, 516 U.S. 299, 311–12 (1996).

[11] *Id.* at 312.

[12] Green argues *Mohawk Indus., Inc. v. Carpenter* "undermine[s]" the Supreme Court's decision in *Behrens*; in *Carpenter,* discovery orders alleged to violate the attorney-client privilege were not appealable under the collateral-order doctrine. *See* 558 U.S. 100, 104–08 (2009). But as the Supreme Court held in *Behrens*, "appealability determinations

No. 24-60314

Accordingly, we have jurisdiction to review the district court's denial of qualified immunity to Detective Thomas.

## III

We review denials of qualified immunity at the motion-to-dismiss stage de novo.[13] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[14] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[15] When ruling on a Rule 12(b)(6) motion to dismiss, we may rely on the content of the pleadings and "documents attached to either a motion to dismiss or an opposition . . . when the documents are referred to in the pleadings and are central to a plaintiff's claims."[16]

The same standards apply when a motion to dismiss is based on qualified immunity.[17] In such cases, "[t]he crucial question is 'whether the complaint pleads facts that, if true, would permit the inference that Defendants are liable under § 1983 . . . and would overcome their qualified

---

are made for classes of decisions, not individual orders in specific cases." 516 U.S. at 312. Denials of qualified immunity fall into one "class[]"; discovery orders which violate attorney-client privilege are another (inapposite) "class[]."

[13] *See Cantrell v. City of Murphy*, 666 F.3d 911, 918 (5th Cir. 2012).

[14] *Ashcroft*, 556 U.S. at 678 (quotation marks and citation omitted).

[15] *Id.*

[16] *Brand Coupon Network, LLC v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).

[17] *See Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020).

No. 24-60314

immunity defense.'"[18] The plaintiff carries the burden of demonstrating that qualified immunity is inappropriate.[19]

IV

We begin with the central issue: whether Detective Thomas is entitled to qualified immunity. To defeat Detective Thomas's assertion of qualified immunity, Green must plead that Detective Thomas violated a statutory or constitutional right that was clearly established at the time of his indictment and arrest.[20] The district court found that Green made such a showing. We mostly agree.

A

First, Detective Thomas contends the complaint "fails to identify the clearly established constitutional right that was violated, which every reasonable officer would know was a violation."[21] Detective Thomas misreads—or perhaps overlooks—parts of Green's complaint. In his complaint, Green alleges specific violations of the Fourth and Fourteenth Amendments to the U.S. Constitution.[22] So Green has, in fact, identified

---

[18] *Terwilliger v. Reyna*, 4 F.4th 270, 280 (5th Cir. 2021) (citation omitted).

[19] *See id.*

[20] *See Trevino*, 79 F.4th at 530–31.

[21] Detective Thomas generally argues she is "entitled to qualified immunity because the complaint fails to allege facts to support a violation of a clearly established right" without specific reference to any of Green's claims under the Fourth and Fourteenth Amendments. We understand her briefing to appeal the district order's denial of qualified immunity across all of Green's federal claims.

[22] Green asserts claims for state-law malicious prosecution; Fourth-Amendment malicious prosecution; Fourth-Amendment false arrest; and, as the district court construed the complaint, Fourteenth-Amendment due process. *Green*, 734 F. Supp. 3d at 554. Although the complaint (and the briefing) is unclear, we understand the complaint to allege Detective Thomas manipulated a photo lineup and withheld evidence from the grand jury, which are actionable under the Fourteenth Amendment. *See Geter v. Fortenberry*, 849

No. 24-60314

constitutional rights which he alleges Detective Thomas violated. The question, then, is whether these rights were clearly established at the time of Green's arrest in early 2020. Short answer: They were, for the most part.

Start with false arrest under the Fourth Amendment. Our precedents make this one simple: "There can be no doubt that the right not to be arrested absent probable cause was clearly established at the time of [Green's] arrest."[23] And the requirement of probable cause prior to seizure is so foundational it is in the Fourth Amendment itself:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but *upon probable cause*, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.[24]

It is hard to imagine a right more clearly established.

Next, take due process under the Fourteenth Amendment.[25] We have clearly established the right to be free from officers' witness interference and

---

F.2d 1550, 1559 (5th Cir. 1988) *(Geter I)* (recognizing claim as clearly established right under Fourteenth Amendment); *Geter v. Fortenberry*, 882 F.2d 167, 170 (5th Cir. 1989) *(Geter II)* (finding sufficient factual pleadings for claim to overcome qualified immunity).

[23] *Alexander v. City of Round Rock*, 854 F.3d 298, 306–07 (5th Cir. 2017) (collecting cases); *see also Gerstein v. Pugh*, 420 U.S. 103, 114 (1975) (holding that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to any extended restraint on liberty following an arrest).

[24] U.S. CONST. amend. IV (emphasis added).

[25] Green's Fourteenth Amendment claim may be pursued alongside his Fourth Amendment claims. *See, e.g.*, *Green*, 734 F. Supp. 3d at 555; *Castellano v. Fragozo*, 352 F.3d 939, 960 (5th Cir. 2003) (en banc) (permitting Fourth and Fourteenth Amendment claims to proceed simultaneously to trial); *Cole v. Carson*, 802 F.3d 752, 772 (5th Cir. 2015) ("Though these wrongs may be addressed through a Fourth Amendment challenge in many cases, they do not disappear where there is no violation of that amendment. Instead,

No. 24-60314

concealment of exculpatory evidence which results in unlawful arrest, detention, or conviction.[26] An officer "cannot avail himself of a qualified immunity defense if he procures false identification by unlawful means or deliberately conceals exculpatory evidence, for such activity violates clearly established constitutional principles."[27] And such "unlawful means" include suggestive photo lineups, like "prodding the witness[] to select another picture when they had chosen incorrectly."[28]

Finally, we look at malicious prosecution under the Fourth Amendment. In finding clearly established law, the district court overlooked *Espinal v. City of Houston*, in which a plaintiff sued officers under § 1983 for malicious prosecution under the Fourth and Fourteenth Amendments.[29]

---

where there is no more specific constitutional protection available, the Fourteenth Amendment may offer protection."), *cert. granted, judgment vacated sub nom. Hunter v. Cole*, 580 U.S. 994 (2016), *and opinion reinstated in part*, 905 F.3d 334 (5th Cir. 2018); *id.* at 772 n.143 ("Certain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands." (quoting *Soldal v. Cook Cnty.*, 506 U.S. 56, 70 (1992))). *Cole* does not suggest that Fourth Amendment and Fourteenth Amendment violations are only available as alternative claims; it merely asserts that in cases where a plaintiff cannot meet the requirements for a Fourth Amendment claim, the Fourteenth Amendment *may* provide a path to relief. 802 F.3d at 772. And the Supreme Court only hesitated to *expand* claims available under the Fourteenth Amendment through substantive due process when such claims were already available through other provisions of the Constitution. *See Albright v. Oliver*, 510 U.S. 266, 271–73 (1994) (finding no Fourteenth Amendment right to be free from malicious prosecution).

[26] *See, e.g.*, *Geter I*, 849 F.2d at 1559.

[27] *Id.* (first citing *Manson v. Brathwaite*, 432 U.S. 98 (1977); then citing *Brady v. Maryland*, 373 U.S. 83 (1963)); *see also Good v. Curtis*, 601 F.3d 393, 399 (5th Cir. 2010) (finding an officer's "knowing efforts to secure a false identification by fabricating evidence or otherwise unlawfully influencing witnesses is not entitled to qualified immunity").

[28] *Geter II*, 882 F.2d at 170.

[29] *See* 96 F.4th 741, 749 (5th Cir. 2024). Neither of the parties briefed this case, either. Generally, our review is limited by the party-presentation principle. *See Elmen Holdings, LLC v. Martin Marietta Materials, Inc.*, 86 F.4th 667, 674 (5th Cir. 2023). "But it is untrue that the party-presentation principle somehow limits federal judges to reading

There, the plaintiff "was arrested and indicted in 2020," like Green, "when the constitutional prosecution tort did not exist in our circuit," though such a claim now exists.[30] Accordingly, we held, "the officers could not possibly have violated clearly established law at the time."[31]

Our circuit previously suggested "[t]he initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection—the Fourth Amendment if the accused is seized and arrested, for example."[32] Seeing no direct conflict between this holding and that of *Espinal*, the rule of orderliness requires that we follow our circuit's precedent.[33] We do so here. For Green's malicious prosecution

---

only those cases cited in a Table of Authorities." *L. Off. of Rogelio Solis PLLC v. Curtis*, 93 F.4th 276, 277–78 (5th Cir. 2024) (OLDHAM, J., dissenting from denial of reh'g en banc); *see also Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90, 99 (1991) ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law."); *Elder v. Holloway*, 510 U.S. 510, 512, 515–16 (1994) (holding that "appellate review of qualified immunity dispositions is to be conducted in light of all relevant precedents," not just those cited by the district court or briefed by the parties).

[30] *Espinal*, 96 F.4th at 749.

[31] *Id.*

[32] *Winfrey v. Rogers*, 901 F.3d 483, 491 (5th Cir. 2018) (quoting *Castellano*, 352 F.3d at 953) (recognizing Fourth Amendment claims analogous to malicious-prosecution tort claims).

[33] *See In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 792 (5th Cir. 2021) ("It is a well-settled Fifth Circuit rule of orderliness that one panel of our court may not overturn another panel′s decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our en banc court. This rule is strict and rigidly applied." (internal quotation marks and citation omitted)); *Arnold v. U.S. Dep't of Interior*, 213 F.3d 193, 196 n.4 (5th Cir. 2000) ("[U]nder the rule of orderliness, to the extent that a more recent case contradicts an older case, the newer language has no effect.").

claim only, Detective Thomas did not violate clearly established law, and she is thus entitled to qualified immunity.[34]

Though Detective Thomas contests factual distinctions in the caselaw used by Green, we are not beholden to the cases cited by a plaintiff,[35] and "[t]he law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'"[36] Our precedents—regardless of whether they were cited by Green—gave Detective Thomas "fair warning" of Green's right to be free from false arrest under the Fourth Amendment and his due process rights under the Fourteenth Amendment.[37]

B

We now must determine whether Green sufficiently pleaded that Detective Thomas violated his clearly established rights under the Fourth

---

[34] Because failure to meet either prong of the qualified-immunity test is fatal to a claim, we need not consider whether Green sufficiently pleaded malicious prosecution prior to granting Detective Thomas qualified immunity on this claim. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (permitting courts "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand" and granting qualified immunity because "the unlawfulness of the officers' conduct in this case was not clearly established").

[35] *See Bailey v. Ramos*, 125 F.4th 667, 682 n.60 (5th Cir. 2025) (collecting cases and explaining that the Supreme Court and this circuit recognize courts reviewing qualified immunity are not restricted to only the cases cited by plaintiffs).

[36] *Bailey v. Iles*, 87 F.4th 275, 289 (5th Cir. 2023) (quoting *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc)).

[37] *Id.*

and Fourteenth Amendments. The district court found Green's complaint was sufficient,[38] and we agree.

1

We start with Green's Fourth Amendment claim for false arrest. "To prevail in a § 1983 claim for false arrest, a plaintiff must show that . . . the officers could not have reasonably believed that they had probable cause to arrest the plaintiff for any crime."[39] Green was arrested and jailed—for nearly two years—for Robertson's murder. So the only element at issue is probable cause.

Detective Thomas argues that she "is immunized against reasonable mistakes concerning the presence of probable cause." It is true that "[e]ven law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to" qualified immunity.[40] But there is no such "reasonabl[e] but mistaken[] conclu[sion]" in this case.

"Probable cause is established by facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing . . . that the suspect has committed . . . an offense."[41] Here, accepting Green's allegations as true, Detective Thomas

---

[38] *See Green,* 734 F. Supp. 3d at 552–56.

[39] *O'Dwyer v. Nelson*, 310 F. App'x 741, 745 (5th Cir. 2009) (quotation marks and citation omitted); *see also Davidson v. City of Stafford*, 848 F.3d 384, 391 (5th Cir. 2017), *as revised* (Mar. 2017).

[40] *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 206 (5th Cir. 2009) (alteration in original) (quotation marks and citation omitted).

[41] *Arizmendi v. Gabbert*, 919 F.3d 891, 897 (5th Cir. 2019) (quotation marks and citation omitted); *see also Hernandez v. Terrones*, 397 F. App'x 954, 966 (5th Cir. 2010) ("In the context of evaluating the existence of probable cause and whether an officer is entitled qualified immunity, 'we embark on a practical, common-sense [determination] whether given all of the circumstances' a reasonable officer could have believed 'there is a fair

had information which would have undercut any reasonable belief that Green murdered Robertson.

First, Jennings alleged that Green confessed to killing Robertson and moving his body. But a police report showed that Robertson, after having been shot, was alive and went to Avery Forbes's home, where he knocked on the door and spoke with Forbes before he died at that location. Such evidence directly contradicts Jennings's statement that Green moved Robertson's body.

Second, officers had evidence that another individual—Brandon Summerall—had been with the deceased shortly before his death. Such evidence would offer another person of interest that could have been involved in the crime and undermine probable cause for both Detective Thomas and the grand jury to indict and arrest Green.

Third, Detective Thomas took Jennings's initial statement and could have provided the grand jury with information about the informant's status—jailed for burglary and grand larceny—and mental state at the time of giving the statement—high or withdrawing from illicit drugs. Such information would have diminished Detective Thomas's ability to rely on Jennings's statement and at least provided the grand jury with the opportunity to determine whether to rely on the informant's statement.

As a result, Green has alleged sufficient facts to show a lack of probable cause at this stage.

_____

probability' [Plaintiff] committed the crime charged." (alterations in original) (quotation marks and citations omitted)).

2

We next turn to Green's Fourteenth Amendment due process claim. To succeed, Green must plead "specific facts" regarding "what exculpatory evidence [Detective Thomas] suppressed and concealed" and "what 'unlawful means'" she "used to procure the identification[]."[42]

Green's complaint sufficiently alleges a violation of his Fourteenth Amendment right to due process. As to exculpatory evidence, the same evidence that should have cast doubt in Detective Thomas's mind regarding Green's culpability and Jennings's reliability is the same evidence that Green alleges was suppressed from the grand jury.[43] And as to Jennings's identification, Green alleges—based on Jennings's recantation, attached to the complaint—that Jennings identified a different suspect in the photo lineup with Detective Thomas. After Jennings identified someone else, Detective Thomas "prodd[ed]" Jennings by pointing to another suspect: Green.[44] This method of identification, if true, is the very type of "unlawful" and "suggestive" identification procedure for which we have previously denied qualified immunity at the motion-to-dismiss stage.[45]

Accepting his allegations as true, Green's complaint is clear. Detective Thomas manipulated a photo lineup. She relied on uncorroborated testimony from a high—or withdrawing—jailhouse informant who was contradicted by police reports to obtain an indictment against Green. And she withheld critical information in Green's favor from the grand jury—information which should have given Detective Thomas pause to even indict

_____

[42] *Geter I*, 849 F.2d at 1559.

[43] *See ante*, at 13.

[44] *Geter II*, 882 F.2d at 170–71.

[45] *See id.* at 171.

No. 24-60314

him in the first place. Green has sufficiently alleged violations of his clearly established Fourth and Fourteenth Amendment rights. Subject to the independent-intermediary doctrine, discussed below, Detective Thomas is not entitled to qualified immunity on Green's Fourth Amendment false arrest and Fourteenth Amendment due process claims.

V

We next assess whether the independent-intermediary doctrine applies to this case. Detective Thomas asserts that she is entitled to qualified immunity because a grand jury indicted Green, and thus, the independent-intermediary doctrine protects her against all of Green's claims. The district court, taking Green's allegations as true and making reasonable factual references in his favor, found the doctrine did not protect Detective Thomas.[46] We agree.

The independent-intermediary doctrine "becomes relevant when . . . a plaintiff's claims depend on a lack of probable cause."[47] Green's Fourth Amendment claims depend on an absence of probable cause. Accordingly, Detective Thomas must show an "intermediate's decision [broke] the causal chain and insulate[d]" her.[48] As we have held,

> [T]he chain of causation between the officer's conduct and the unlawful arrest "is broken only where *all* the facts are presented to the grand jury, or other independent intermediary where the malicious motive of the law enforcement officials

---

[46] *See Green*, 734 F. Supp. 3d at 558.

[47] *Trevino*, 79 F.4th at 531 (quoting *Buehler v. City of Austin*, 824 F.3d 548, 553 (5th Cir. 2016)).

[48] *Rodriguez v. Ritchey*, 556 F.2d 1185, 1193 (5th Cir. 1977).

does not lead them to withhold any relevant information from the independent intermediary."[49]

The doctrine does not apply if "it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant"[50] and that "taint" is material—"that is, even knowing misstatements or omissions will not satisfy the taint exception if the misstated or omitted information would not have altered the intermediary's probable-cause finding."[51]

The standard for "taint" in grand jury deliberations is relatively low. An officer "taint[s]" the deliberation by "withhold[ing] any relevant information."[52] And "[a]ny misdirection of the magistrate or the grand jury by omission or commission perpetuates the taint of the original official behavior."[53]

Detective Thomas, in arguing that Green has no evidence of anything "improperly presented," "misl[eading]," or "malicious[]," holds Green to too high a bar at the motion-to-dismiss stage.[54] Of course, a criminal defendant—and, as here, later a § 1983 plaintiff—has limited knowledge of

---

[49] *Winfrey*, 901 F.3d at 497 (emphasis added) (quoting *Buehler*, 824 F.3d at 554).

[50] *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010) (internal quotation marks and citation omitted).

[51] *Trevino*, 79 F.4th at 532 (citations omitted).

[52] *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988).

[53] *Id.*

[54] Detective Thomas relies on summary-judgment-stage cases, which of course require a higher burden of proof for plaintiffs than those ruling on motions to dismiss. *See Craig v. Dallas Area Rapid Transit Authority*, 504 F. App'x 328, 331–32 (5th Cir. 2012); *Buehler*, 824 F.3d at 553–54.

what occurs in grand jury proceedings.[55] So "[a]t the motion-to-dismiss stage, 'mere allegations of taint' may be adequate 'where the complaint alleges other facts supporting the inference.'"[56] Accordingly, a plaintiff must specifically allege that the officer "'deliberately or recklessly' provided false information to . . . the grand jury" or made "knowing and intentional omissions that result in a warrant being issued without probable cause."[57]

Regardless of which claims it applies to, the independent-intermediary doctrine does not shield Detective Thomas.[58] Green's complaint and its attachments—including Jennings's recantation—assert that Detective Thomas manipulated a photo lineup and relied on an uncorroborated statement from a jailhouse informant who was high or experiencing withdrawals. It also asserts that Detective Thomas withheld crucial, specific evidence from the grand jury which would contradict Jennings's original statement that Green moved the deceased body, would suggest Jennings's unreliability as a witness and in his identification of Green, and would suggest another individual was with the deceased person earlier in the day of his murder. And Green asserted that this withheld evidence was material: "No Grand Jury would have indicted Plaintiff had it been truthfully informed that Jennings'[s] statement was false, was contrary to the known

---

[55] *See, e.g.*, *Wilson v. Stroman*, 33 F.4th 202, 212–13 (5th Cir. 2022) (finding that, given "a general rule of secrecy shrouds the proceedings of grand juries," plaintiff sufficiently alleged "taint" when they stated that officials made material omissions and misrepresentations to grand jury and withheld video evidence from grand jury that undermined probable cause (quoting *Shields v. Twiss*, 389 F.3d 142, 147 (5th Cir. 2004))).

[56] *Trevino*, 79 F.4th at 532 (citing *McLin v. Ard*, 866 F.3d 682, 690 (5th Cir. 2017)).

[57] *Anokwuru v. City of Hous.*, 990 F.3d 956, 964 (5th Cir. 2021) (citations omitted).

[58] *See Winfrey*, 901 F.3d at 497 ("[B]ecause, at best, it is not clear whether 'all the facts [were] presented to the grand jury,' we hold that the independent-intermediary doctrine does not apply." (alterations in original) (quoting *Cuadra*, 626 F.3d at 813)).

evidence, and was given by a drug addict in a mentally-altered condition." Accordingly, Green's pleadings are sufficient to suggest Detective Thomas materially tainted the grand jury proceedings, and thus, the independent-intermediary doctrine does not apply.

## VI

Finally, we turn to Green's argument that qualified immunity is unlawful. Though recognizing the uphill battle, Green preserves his argument that qualified immunity rests on an erroneous interpretation of the Civil Rights Act of 1871 and is "unsound law." The district court, agreeing with Green, provided significant background on the doctrine's faulty underpinnings and effects.[59]

But given our role as "middle-management circuit judges, we must follow binding precedent."[60] The district court is "not free to overturn" our circuit's precedent,[61] nor are we permitted to overturn the Supreme Court's. We readily acknowledge the legal, social, and practical defects of the judicially contrived qualified-immunity doctrine, but we are powerless to scrap it.

---

[59] *Green*, 734 F. Supp. 3d at 543–48, 559–69; *see also Rogers v. Jarrett*, 63 F.4th 971, 979-980 (5th Cir. 2023) (WILLETT, J., concurring); *Zadeh v. Robinson*, 928 F.3d 457, 474–81 (5th Cir. 2019) (WILLETT, J., concurring in part, dissenting in part); *Horvath v. City of Leander*, 946 F.3d 787, 800 (5th Cir. 2020), *as revised* (Jan. 13, 2020) (HO, J., concurring in the judgment in part, dissenting in part).

[60] *Consumers' Rsch. v. Consumer Prod. Safety Comm'n*, 91 F.4th 342, 346 (5th Cir. 2024), *cert. denied*, No. 23-1323, 2024 WL 4529808 (U.S. Oct. 21, 2024).

[61] *In re Bonvillian Marine Serv., Inc.*, 19 F.4th at 789.

VII

Qualified immunity does not protect government officials "who knowingly violate the law."[62] Based on the allegations in the complaint, Detective Thomas falls into that camp.

Because Green has sufficiently alleged violations of his clearly established Fourth and Fourteenth Amendment rights—and the independent-intermediary doctrine doesn't apply—Detective Thomas is not entitled to qualified immunity. However, because a constitutional malicious-prosecution claim did not exist in our circuit at the time of Green's arrest, Detective Thomas gets qualified immunity for that claim only.

Accordingly, we AFFIRM the district court's denial of qualified immunity for Green's false arrest and due process claims under the Fourth and Fourteenth Amendments and REVERSE its denial of qualified immunity for Green's Fourth Amendment malicious-prosecution claim.

---

[62] *Malley v. Briggs*, 475 U.S. 335, 341 (1986).